Laramore, Judge,
delivered the opinion of the court:
Plaintiff, an officer retired for disability, sues for additional pay based upon percentage of disability. Pie alleges arbitrary action on the part of the various Air Force boards in the determination of the degree of his disability under section 411 of the Career Compensation Act of 1949, 63 Stat. 802, 823.
A trial was held by a commissioner of this court, and the evidence in the case establishes that the rating given plaintiff was in accordance with his then infirmity.
In October 1946, when plaintiff was granted retirement, the only requirement was that he be disabled and unfit for service. The adjectives used to describe the degree of his disability, i. e., moderate or severe, were of no consequence at that time. Descriptive words only became necessary when plaintiff elected to take under the Career Compensation Act, supra. It was only then that plaintiff had to be rated as to percentage of disability and only then that care was taken in the use of descriptive words.
This is a highly technical field and even doctors many times disagree as to diagnosis and degree. Certainly then, we could not attribute arbitrariness when various doctors and boards honestly, in their best judgment under facts shown, rated the percentage of plaintiff’s disability. The fact that *369 this court might have rated plaintiff differently, or might even feel the rating was wrong, is not the issue before us. Our task is to determine whether the decision of the Secretary of the Air Force was arbitrary or so erroneous as to make his decision subject to review.
As a prerequisite to recovery, plaintiff must prove that the action of the various boards and/or the Secretary of the Air Force was arbitrary. Dismuke v. United States, 297 U. S. 167; Girault v. United States, 133 C. Cls. 135; Furlong v. United States, 138 C. Cls. 843; Wales v. United States, 132 C. Cls. 765; Prichard v. United States, 133 C. Cls. 212.
Since the facts show that the rating given plaintiff was in accordance with his infirmity, no arbitrary action could be attributed to the board or boards that so found.
Furthermore, plaintiff sought relief in the Air Force Board for Correction of Military Records. No arbitrary action of that board is claimed or proved. Absent an allegation and proof of arbitrary action, plaintiff is bound by the approved decision of that board. Wales v. United States, supra; Gordon v. United States, 129 C. Cls. 270; Woodford v. United States, 138 C. Cls. 228.
The correction board determined that no corrective action was indicated in plaintiff’s case, and plaintiff is bound thereby.
Plaintiff’s petition will be dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner George H. Foster, and the briefs and argument of counsel, makes findings of fact as follows:
1. On June 12,1934, plaintiff was commissioned in the Officers’ Reserve Corps, Army of the United States, as a captain, Judge Advocate General’s Department, and was ordered to extended active duty on April 21, 1941. On March 2, *370 1942, be was detailed to the Air Corps. He served in the European Theater of Operations from December 5, 1943, through August 2, 1945.
2. In August 1944, plaintiff suffered a severe concussion when an ammunition dump exploded near him while in a combat area in France. Immediately following the explosion, he was completely deaf. On September 1, 1944, he was evacuated to the 303d General Hospital in England. There, in a few weeks, he recovered partial function of the left ear. The diagnosis of his condition, as made by Army doctors at that time and place, was as follows:
Defective hearing, nerve type, right, severe. Psychoneurosis, mixed type, mild. [Also recorded as “battle fatigue.”]
On September 21,1944, he was returned to duty in France. He was later returned to England as a liaison officer. In December 1944, a V2 rocket exploded near him, and, following this, his hearing and nerves became worse.
After V-E Day, plaintiff was flown into France with his outfit and proceeded to Germany. After 6 weeks in Germany, his commanding officer ordered him to the hospital. On July 9,1945, plaintiff was admitted to the 180th General Hospital in Germany. At that time and place his condition was diagnosed as:
Psychoneurosis, anxiety state, moderate.
Defective hearing.
Evacuation was recommended.
3. Plaintiff was evacuated to the United States via the 1st and 196th hospitals in England. On July 16,1945, while at the 1st general hospital, plaintiff’s condition was diagnosed as:
Psychoneurosis, anxiety-type and conversion hysteria, severe.
Evacuation was recommended.
On July 18,1945, while at that hospital, a Board of Medical Officers of the United States Army found plaintiff unfit for duty in the ETO, USA because of:
Anxiety state, severe, cause undetermined. LOD Yes.
*371 The board ordered him evacuated to Halloran General Hospital in the United States.
4. On August 9,1945, plaintiff was transferred from Hal-loran General Hospital to Hoff General Hospital where his condition on August 13, 1945, was diagnosed as:
Anxiety state, chronic, cause not determined, manifested by lacrymosity, introspection, fear and apprehension. Condition was precipitated by a blast from a mine in the latter part'of August 1944 in Normandy. LD Yes.
On August 24,1945, the following diagnosis was made:
Anxiety reaction, conversion hysteria, severe, as manifested by loss of hearing, nervousness, apprehension and emotional instability.
5. On August 29, 1945, plaintiff was transferred to Birmingham General Hospital where he received intensive treatment for his condition. On January 24,1946, a disposition board found plaintiff incapacitated for military duty as of June 1945, and recommended that plaintiff appear before an Army retiring board. The disposition board’s diagnosis of plaintiff was as follows:
1. Anxiety state, chronic, severe, manifested by extreme emotional lability, nervousness and irritability, with swings of depressed mood, anorexia, vomiting, sleeplessness, and crying spells, caused by severe stress of over 1 year overseas service when near two explosions; no predisposition; marked functional impair-mentjUnimproved. LD Yes.
2. Deafness, right, total loss; left, partial loss of 7.7% to whispered voice; unimproved. LD: Yes.
On February 13, 1946, the Army retiring board found plaintiff permanently incapacitated for active service for the following causes:
1. Anxiety reaction, chronic, severe, manifested by extreme emotional lability, nervousness and irritability, with swings of depressed mood, anorexia, vomiting, sleeplessness, and crying spells; severe stress of over 1 year overseas service and near two explosions; no predisposition; marked functional impairment.
2. Deafness: right, total loss; left, partial loss of 42% to audiometer test.
*372 6. Plaintiff was placed on terminal leave which was to expire June 17, 1946, and ordered home to await release from active duty. On March 22,1946, the Surgeon General, not entirely concurring in the findings of the retiring board, recommended that the plaintiff be admitted to Beaumont General Plospital for further observation. On April 26, 1946, plaintiff was admitted to Beaumont General Hospital and was transferred May 11, 1946, to Borden General Hospital for evaluation, treatment, and disposition. At that hospital, on July 2,1946, plaintiff’s condition was diagnosed by a disposition board as follows:
1. Anxiety reaction, chronic, severe, manifested by marked increased emotional tension, depression, frequent crying spells, startle reaction, insomnia, dizzy spells, irritability, no evident predisposition, severe external stress of combat experiences in the ETO in 1944 with exposure to nearby blasts on two occasions, marked impairment. Unchanged. LD Yes.
2. Deafness, nerve type, bilateral, severe, caused by cochlear concussion from ammunition explosion August 1944 near Avranche, France, and a V2-rocket explosion in London, England in December 1944. Hearing AD 0/20 0/15 total loss, AD 3/20 1/15 60 decibels loss. Hearing with aid good to 20 feet. Unchanged. LD Yes.
3. Varicose veins, lesser saphenous system, left leg, mild, cause undetermined, initially manifested following blast of ammunition dump, August 1944 in France. Unchanged. LD Yes.
On August 16, 1946, the Surgeon General, in view of the agreement with those findings by the disposition board at Borden, expressed his concurrence with the findings of the Army retiring board of February 13, 1946. On October 1, 1946, those findings were approved by the Secretary of War. Thereafter, plaintiff was retired as a lieutenant colonel and awarded retirement pay from October 2,1946, in the amount of $288.75 monthly, that sum being 75 percent of the then pay of a lieutenant colonel of plaintiff’s length of service.
7. On October 12, 1949, the Career Compensation Act of 1949 was enacted (63 Stat. 802). Section 411 of that act provided in pertinent part as follows:
*373 Pursuant to such regulations as the President may prescribe, (1) any member or former member of the uniformed services heretofore retired by reason of physical disability and now receiving or entitled to receive retired or retirement pay; * * * may elect within the 5-year period following the effective date of this title, (A) to qualify for disability retirement pay under the provisions of-this Act * * * Provided, That the determination of the percentage of disability * * * shall be based upon the disability of such * * * person, as of the time * * * he was granted retirement pay, * * * and the percentage of such disability will be determined in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration; or (B) to receive retired pay or retirement pay computed by one of the two methods contained in section 511 of this Act: * * *
Section 511 provided in pertinent part as follows:
On and after the effective date of this section, (1) members of the uniformed services heretofore retired * * * shall be entitled to receive retired pay, retirement pay, retainer pay, or equivalent pay, in the amount whichever is the greater, computed by one of the following methods: (a) the monthly retired pay, retainer pay, or equivalent pay in the amount authorized for such members and former members by provisions of law in effect on the day immediately preceding the date of the enactment of this Act, or (b) monthly retired pay, retirement pay, retainer pay, or equivalent pay equal to 2y2 Per centum of the monthly basic pay of the highest federally recognized rank, grade, or rating, whether under a permanent or temporary appointment, satisfactorily held, by such member or former member, as determined by the Secretary concerned, and which such member, or former member, or person would be entitled to receive if serving-on active duty in such rank, grade, or rating, multiplied by the number of years of active service creditable to him: * * *
8. Pursuant to this Act, the Air Force physical review board, Headquarters, TJSAF, reviewed plaintiff’s case and determined that he was disabled at the time of his separation from the service under Diagnostic Code No. 6256, 40 per centum, and under Diagnostic Codes Nos. 9105-9101, 30 per centum, with a combined rating of 60 per centum. *374 The 40 per centum disability was for impairment of hearing and the 30 per centum disability was for anxiety reaction. Plaintiff was advised of the decision on May 9, 1950, and objected to the rating by letter of May 18, 1950.
Thereafter the Air Force physical review board reviewed the case on May 29, 1950, in the light of the objection above and reaffirmed the rating of 60 per centum.
9. On August 7, 1950, the findings of the physical review board were again reviewed; this time by the Air Force personnel board which board found no evidence to support an increase in the disability ratings given plaintiff by the physical review board.
On August 11, 1950, the Secretary of the Air Force approved the recommendations of the Air Force personnel board with regard to the per centum of disability of plaintiff.
10. On January 4,1951, additional evidence was submitted on behalf of plaintiff by Mr. Patrick E. Carroll of the Disabled American Veterans.
On March 1, 1951, the Air Force personnel board again reviewed plaintiff’s military and medical records, together with the new evidence and made the following findings:
The Air Force Personnel Board agrees, with minor changes, with the recommended findings of the Physical Eeview Board, Headquarters, United States Air Force, and finds:
a. That the diagnoses in the case of subject member of the Air Force as of the time he was granted retirement pay for physical disability were: (1) Anxiety reaction, chronic, moderately severe, under diagnostic code No. 9104 (9101) with a disability rating of thirty (30) per centum; (2) impairment of auditory acuity, bilateral, under diagnostic code No. 6256 with a disability rating of forty (40) per centum; (3) varicose veins, left leg, mild, under diagnostic code No. 7120, with a disability rating of zero (0) per centum.
b. That the combined disability rating, in accordance with the standard schedule for rating disabilities in current use by the Veterans Administration, was sixty (60) per centum.
*375 On March 9,1951, the Secretary of the Air Force approved the recommendations of the Air Force Personnel Board which convened March 1,1951.
11. Plaintiff appealed to the Air Force Board for the Correction of Military Becords. On March 11,1953, that board determined that no corrective action was indicated in this case.
12. The Veterans’ Administration Schedule for Bating Disabilities contains the following criteria for rating plaintiff’s nervous condition:
9101 Neurasthenia: Rating
Pronounced; with persistent insomnia, neuro-muscular asthenia, emaciation, gastro-intestinal atony; with instability, inability to concentrate; depression; in symptom combinations that are persistent and continuous;- such as to produce nearly complete social and industrial inadapt-ability - 80
Severe; characteristic findings in marked and persistent form with definite compatible physical asthenia, i. e., loss of weight, circulatory disturbance, vasomotor changes, tremors, objectively substantiated; productive of severe social and industrial inadaptability_ 50
Moderately severe; characteristic mental and physical fatigability unrelated to disease process or toxic agents, with fairly frequent headaches not due to toxemia, uncorrected visual defect, etc., fairly frequent prolonged periods of insomnia, or objectively ascertained vasomotor instability, approximating neurocireulatory asthenia with decided reduction in exercise tolerance; productive of considerable social and industrial inadapt-ability —:- 30
Moderate_ 10
Mild_ 0
9104 Anxiety hysteria: Rate as psychasthenia, substituting psychological reactions of fear, anxiety, etc., for phobias, obsessions, or compulsions.
9105 Anxiety state: Rate as neurasthenia, neurosis (or psy-ehoneurosis) traumatic. This is an unsatisfactory diagnosis and should be replaced by the appropriate predominating psyehoneurotic type, to connote functional conditions, or if following skull fracture or brain concussion by “post-traumatic personality disorders” to connote organic conditions.
*376 9106 Psycboneurosis, mixed types: This is an unsatisfactory diagnosis and should be replaced by diagnois reflecting the principal psychoneurotic type and so rated.
Psychoneurosis, characterized only by fixed or variable somatic complaints. Rate as hypochondriasis.
13. In 1946, a determination of percentage of disability was not required for retirement from the Army, the only requirement being that the officer be permanently incapacitated for active service. Descriptive words relating to the degree of severity were not deemed important.
In plaintiff’s appeals for review of the combined rating of 60 percent, he contended that the board had arbitrarily changed the previous determination of “anxiety reaction, chronic, severe” to “anxiety reaction, chronic, moderately severe.”
14. At the rehearing, March 1, 1951, of this case by the Air Force personnel board, that board stated:
In evaluating the pertinent clinical evidence to determine the severity classification applicable to the Anxiety Reaction manifested by subject member at the time of his retirement, the Personnel Board gave consideration to the specific requirements prescribed for ratings more advanced than “moderately severe” under diagnostic code 9101, Anxiety State (Neurasthenia) of the standard schedule for rating disabilities in current use by the Veterans Administration. In the qualification for ratings for severe and pronounced degrees, it is specified that the degree thereof be substantiated by concurrent evidence of deterioration in general physical health, as reflected by compatible degrees of emaciation, or loss of weight, neuro-muscular weakness, vasomotor and circulatory changes.
In the light of those requirements it is noted that some of the principal subjective findings during his terminal hospitalizations consisted of persistent inability to eat for days at a time, or retain food after eating, and persistent insomnia. It is further noted that his body weights recorded in physical examinations since 1989 are as follows: 1939, 162 lbs.; 1940, 155 lbs.; 1941, 153 lbs.; February 1946, 166 lbs.; April 1946, 155 lbs. In the record of his examination by the Veterans Administration, his weight is reported as 160 lbs. According to standard body weight tables, each of those weights is above the standard normal for his height and age.
*377 Tims, in the evidence presented, the Board has been unable to find clinical evidence of appreciable deterioration of general health, including neuro-muscular or vasomotor impairment, at the time of his retirement which is compatible with the prescribed requirements for a rating higher than moderately severe for his anxiety reaction under diagnostic code No. 9101.
The condition of the varicose veins of his left leg was reported by the surgical consultant at Borden General Hospital in 1946 to be mild and nonsymptomatic. This condition does not meet the minimum requirements for a disability rating for varicose veins, as prescribed under diagnostic code No. 7120.
His hearing defect, reported in the clinical records of Borden General Hospital in 1946 as “AD 0/20, AS 3/20. Hearing with aid good to 20 feet,” is considered to have been properly rated at 40 per centum under diagnostic code No. 6256.
It has been stated that subject member has been awarded a “total disability” rating by the Veterans Administration at some period subsequent to his retirement and prior to his latest evaluation by the Veterans Administration in November 1950. A reference to operational codes adopted by the Veterans Administration reveals the fact that “total disability” ratings may be awarded under a procedure authorized for that organization by Veterans Administration Regulation No. la. It appears that, under that regulation, the specific provisions of the rating schedule may be disregarded in cases manifesting (a) a single permanent disability rated at 60 per centum or more, or (b) two or more disabilities, one of which must be rated at 40 per centum or more with a combined rating of 70 per centum or more. However, this principle is considered not applicable to the Air Force, since its use of the rating schedule is governed by the provisions of Public Law 351, which contains no similar authorization for exceptions to the rating schedule.
15. The record in this case tends to establish that plaintiff’s condition at the time of his retirement and since is consistent with the symptoms contained in the rating schedule under Neurasthenia, moderately severe, rather than those set forth under “pronounced” or “severe.”
16. On October 27,1950, plaintiff was examined by a neuro-psychiatrist for the Veterans’ Administration who diagnosed the plaintiff’s mental condition as follows:
*378 Psychoneurosis, mixed, anxiety associated with conversion reaction in an individual with marked paranoid trends.
The rating then accorded this condition by the Veterans’ Administration was as follows:
9106 Psychoneurosis mixed, anxiety with mixed conversion reaction and paranoid trends; competent.
17. Following retirement, plaintiff, who had practiced law in Chicago before 1941, prepared himself for, took, and passed the required examination for the practice of law in California and was admitted to practice. Pie practiced law in a small way in Los Angeles but his practice was unsuccessful, due, in part at least, to his social and industrial inadaptability.
About 1950, plaintiff, who had, while a young man, been married and divorced, again married. This marriage did not turn out successfully and it was annulled at the instance of the wife. Plaintiff’s condition had, due to treatment by a neuropsychiatrist for the Veterans’ Administration, somewhat improved at the time. The lack of success of the marriage was due to plaintiff’s inability to completely adjust himself to any domestic or social situation.
18. There is no complaint of the Air Force rating of 40 percent disability for the hearing defect, nor for failure to give a disability rating for varicose veins. The Veterans’ Administration had rated the hearing defect at 70 percent in 1950, and 10 percent for the varicose veins.
19. Following the rating by the Air Force of 60 percent, plaintiff elected to receive 60 percent of the 1949 pay rates ($290.70 per month) rather than 75 percent of the pre-1949 rates ($288.75 per month).
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is therefore dismissed.