WhitakeR, Judge,
delivered the opinion of the court:
Plaintiff sues for retired pay.
Plaintiff appeared before an Army Retiring Board on December 11, 1945. This board found that he was permanently incapacitated for active service on account of deafness, and that his deafness had been aggravated by his service and was, therefore, an incident of his service.
On review, the Surgeon General recommended that the ■case be returned to the Betiring Board for further consideration because a mastoidectomy had been performed on plaintiff in 1923, and thereafter there had been a marked diminution of his hearing lasting until at least 1925. The Burgeon General stated that “his present incapacity may therefore well be the natural progression of a pre-existing condition.”
The matter was returned to the Betiring Board, which, after hearing additional testimony, adhered to its original *214 decision that plaintiff’s deafness had been aggravated by his service and that it was, therefore, an incident of his service.
On review the Surgeon General recommended that the Secretary of War should hold that plaintiff’s incapacity was not an incident of his service.
The Adjutant General, acting for the Secretary of War, then referred the case to the Secretary of War’s Personnel Board; This board disapproved of the finding- of the Retiring Board that plaintiff’s incapacity was an incident of his service.
Plaintiff then applied for a review by the Secretary of War’s Disability Review Board. This board also disap-pi'oved of the findings of the Retiring Board and concluded: “Any increase of symptoms or additional physical findings of deafness while on active military service as a commissioned officer are not beyond the natural progress of the pre-existing ear disability and do not constitute permanent aggravation.”
On October 1,1946, the Secretary of War approved these findings, and plaintiff was denied retired pay.
Plaintiff requested a rehearing by the Disability Review Board, but the board found that no new evidence had been presented, and, hence, it adhered to its former conclusion.
Plaintiff then requested a review by the Army Board for Correction of Military Records. This board found that “a thorough review” of the records “fails to reveal any evidence of error or injustice relative to the determination that you did not have a disability, incurred in or aggravated’ by service, of a degree warranting retirement for physical disability, incurred in service, on 17 April 1946, the date of your separation from service.”
The determination of an officer’s right to be retired for physical disability, and his right to retired pay, has been vested by Congress in the President. Section 933 of Title 10, TJ. S. C. (1946 ed.) provides:
When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of service, and such decision is approved by the President, said officer shall be retired from active service and placed on the list of retired officers.
*215 By sections 456 and 456 (a) of Title 10 U. S. C. (1946 ed.) this provision was made applicable to reserve officers.
It follows that no court has any jurisdiction to review the action of the Secretary of War, acting for the President, unless his decision is arbitrary, or capricious, or plainly contrary to law.
Plaintiff relies on Army Regulations 40-1025, paragraph 63 (g) (2), in support of his allegation that the decision of the Secretary of War was arbitrary and contrary to law. This provides in part:
Irrespective of length of service, an Army patient will be presumed to have been in sound condition upon entering active service, unless the disease or injury, or the conditions which brought about the disease, injury, or death, were noted on the patient’s physical examination upon entrance into the service, or unless clear and unmistakable evidence (3 below) demonstrates that the injury or disease, or the conditions which caused the disease, injury or death, though not noted, existed prior ■to the patient’s active service. Further, even if the existence of the condition prior to entering active service has been established, only specific findings of “natural progress” of the disease or injury, based on well-established medical principles, are able to overcome the presumption of service-aggravated (4 below). This provision will serve as a basis for judging line of duty in all cases, on or after 7 December 1941, and before the termination of hostilities incident to the present war. * * *
Paragraph 63 (g) (3) of Army Regulations 40-1025, provides in part:
Medical judgment alone, as distinguished from well-established medical principles., will not be considered sufficient to rebut the presumption of the patient’s sound condition at the time of his entrance into active military service * * *
Paragraph 63 (g) (4) provides in part:
Any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles. Medical or surgical treatment furnished during service for pre-existing conditions does not of itself establish increase in disability '; however, if *216 such treatment was necessitated by increase in severity of pre-existing conditions, then such disability will be considered as service-aggravated, unless the condition was improved by such treatment * * *
Under these regulations, therefore, it is to be presumed that the patient was in sound condition when he entered the service. Furthermore, “only specific findings of ‘natural progress’ of the [pre-existing] disease or injury, based on well-established medical principles, are able to overcome the presumption of service aggravated.” Then it is said, that “any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles.”
These regulations were binding on the retiring boards, and •on the Surgeon General, and on the Disability Keview Board, and on the Board for Correction of Military Becords, and on the Secretary of War. Since they were reasonably designed to carry into effect acts of Congress, they have the force and •effect of law.
Plaintiff says that these presumptions have not been rebutted.
The Surgeon General, of course, did not make “specific findings” that plaintiff’s incapacity was the result of “natural progress” of the disease; but, because he thought that “his present incapacity may therefore well be the natural progression of a pre-existing condition,” he recommended that the case be returned to the Betiring Board. But this board did not think that his present condition was the natural progression of a pre-existing condition, but that it was the result of an aggravation of his pre-existing condition.
On the contrary, the Secretary of War’s Disability Beview Board found: “Any increase of symptoms or additional physical findings of deafness while on active military .service as a commissioned officer are not beyond the natural progress ■of the pre-existing ear disability and do not constitute permanent aggravation.” This ruling was reaffirmed on ■consideration of plaintiff’s request for a rehearing.
The Army Board for Correction of Military Becords, at plaintiff’s request, reviewed the records applicable to his *217 case and concluded that they did not disclose “sufficient basis for a hearing of your case by the board.”
The evidence before the four boards was the same. Three-boards came to one conclusion, and the fourth to another. Three boards evidently thought that the presumption set up by paragraph 63 (g) (4) of the Army Regulations cited above had been overcome, because it is to be presumed that they took these regulations into consideration. Only one of the four boards thought it had not been. Who was right, we do not know; nor is it our province to make this determination. Congress vested this authority in the Secretary of War, acting for the President. His action in approving the findings of the Disability Review Board and the Board for Correction of Military Records is not shown to have been arbitrary or contrary to law, and, therefore, we have no jurisdiction to review it.
There is no doubt of the fact that plaintiff had had a mastoidectomy while a cadet in the United States Military Academy, and that upon his application for re-admission to the Academy in 1925 he was found to still have defective hearing, and for this reason the application for his admission to the Academy was denied. But between this time and the time of plaintiff’s commission in the Reserve Corps of the Army on November 25,1940, his hearing had sufficiently improved so that his physical examination, prior to his being-commissioned, showed 20/20 for each ear, which is normal.
Further, when plaintiff was physically examined for duty as an aerial observer his hearing was found to be normal,, even on the whisper test.
Therefore, notwithstanding plaintiff’s ear trouble some twenty years before his discharge, plaintiff’s hearing when he entered the service was presumed to be good, and his later-deafness was presumed to have been incurred in service, or the previous injury contributing toward his deafness was presumed to have been aggravated by his service.
During his service plaintiff was subjected on a number of occasions to severe bombardment by heavy artillery fire. It is common knowledge that this will cause temporary deafness, at least, and if there has been a pre-existing injury to< the ears, it could well cause permanent deafness.
*218 Were we at liberty to review the facts, we might well have come to the conclusion that the evidence did not rebut the presumption, but rather supported it; but three of the boards thought otherwise and the Secretary of War concurred. We cannot say that these decisions were arbitrary or contrary to law, or so clearly lacking in factual support as would require us to hold them to have been arbitrary or capricious. Under these circumstances we will not review the Secretary’s decision.
It results that plaintiff’s petition must be dismissed.
It is so ordered.
LaRamoke, Judge; MaddeN, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner George H. Foster, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff entered the United States Military Academy as a cadet on July 1,1922. While so enrolled at West Point, plaintiff had an attack of mastoiditis, complicated by meningitis. On March 14, 1923, plaintiff underwent a radical mastoid operation, and, upon the recommendation of his surgeon, was granted sick leave of absence for the remainder of the scholastic year. Upon his return, he remained at West Point until his discharge from the Academy for scholastic failure, on January 15,1925.
2. In March of 1925, plaintiff made application for readmission to the United States Military Academy. In his application, he stated that he suffered from a “slight defective hearing in right ear.” However, he was then examined and it was disclosed that his hearing registered as follows: “Eight, voice 4/20; watch 5/85. Left, voice 20/20; watch 85/85” and that the right membrane tympani was “dull” and “thickened.” A board of 10 medical officers thereupon, on March 18, 1925, recommended that plaintiff be rejected because of “defective hearing” and on May 2,1925, plaintiff was formally advised that he was rejected physically because of “defective hearing, right ear” and could not, therefore, be readmitted to the United States Military Academy.
*219 3. Plaintiff, thereafter, served in the National Guard of the State of Texas, as an enlisted man from November 10, 1925, to February 19, 1926. On February 20, 1926, he was appointed a first lieutenant of Infantry in the National Guard of Texas, and promoted to captain, September 23, 1927. He was also appointed captain, Infantry, Eeserve Corps, on October 27,1927, and later transferred to the Inactive National Guard on May 14, 1937, at his own request.
On November 25, 1940, he entered upon active duty as a captain, Infantry Eeserve, and later was promoted to major, lieutenant colonel, and colonel in the Army of the United States.
4. The report of plaintiff’s physical examination, upon entering the military service in November 1940, discloses that plaintiff’s ears were considered normal, and his hearing was 20/20 for each ear. Apparently no audiometer test was given. The report of physical examination further discloses that plaintiff had an “acute inflammatory lesion over left ankle.”
5. On July 10,1941, plaintiff underwent a physical examination for duty as an aerial observer and he was found physically qualified for flying duty. The report of that physical examination showed the following with regard to plaintiff’s hearing:
Ear: History of ear trouble: Mastoidectomy, right, 1923, N. S. N. D.
External ear: E. Normal L. Normal Membrana tympani. E. Normal L. Normal.
Hearing (whisper): E. 20/20. L. 20/20. Audiometer (percent loss): E. — L. —.
6. During the year 1941, while the plaintiff was on active duty with the Army of the United States and while actively ■engaged in military maneuvers in Texas, he ran a cactus thorn into his lower left leg. The resulting wound became infected and a skin ulcer developed. Thereafter, claimant was hospitalized for a period of seven months where he underwent a skin graft in December 1941. The wound healed and there has been no recurrence of the trouble.
7. During the years 1942 and 1943, plaintiff served as an Infantry officer with a combat division in North Africa, *220 Sicily, and Italy. During this time he was frequently under heavy shell fire, and he gradually became aware that' his hearing was impaired. This was evident to the Battalion' and Regimental Surgeons, and he was ordered to an evacuation hospital. On October 4,1943, plaintiff was admitted to' an evacuation hospital overseas with a diagnosis of “defective hearing bilat., type undetermined, cause unknown, hearing right ear 5/20 left 20/20 (whispered and spoken voice) (no-tuning forks or audiometer available) Old mastoidectomy scar right, Drums normal. Line of duty: Yes.”
Plaintiff was hospitalized until November 21,1943, and on that date a final diagnosis was made as follows: “Defective hearing, right ear, marked conductive type, secondary to old mastoiditis, right ear, (complete diagnosis unknown) while student at West Point Military Academy, March 1923. (Exact date unknown.) Hearing AD °/15 AS 15/15. Line of duty: Yes.” On that date, November 21,1943, the disposition was: Duty. There is a notation on the medical record as-follows: “Discharged 11-20-53 Duty Class B.”
8. Plaintiff was returned to the United States on 30 days" leave in September 1944 and was subsequently admitted on November 29,1944, to the Army hospital at Camp Lee, Virginia, where he underwent an operation listed as: “Removal of soft cartilaginous area of dissecans and a padded cast applied.”
On March 15,1945, he was transferred to McGuire General Hospital, Richmond, Virginia, for further observation, treatment, and disposition. On March 28,1945, a diagnosis was recorded as follows:
1. Deafness, conductive, right, cause undetermined,. Hearing: AD 1/15, AS 15/15. Unimproved.
2. Varicose veins, bilateral, lesser saphenous veins,, mild, cause undetermined. Improved.
No. 1: Not in line of duty EPTS.
No. 2: In line of duty.
Other hospital reports are to the same effect, whereas others; state the deafness was incurred in line of duty.
On March 28,1945, plaintiff was released from the hospital to “Duty, limited service.”
9. On October 10, 1945, plaintiff was admitted into the-station hospital, at Camp Gordon, Georgia, because of deaf *221 ness in both ears, marked in right. On November 9, 1945, plaintiff was examined by an Army disposition board at the hospital which diagnosed the condition as follows:
Deafness, right, perceptive type, moderate, cause undetermined. Hearing: AD 14/20; AS 20/20 — Whisper voice, AD 1/15; AS 15/15. Unchanged. LDYes. (Au-diogram shows a bilateral perceptive type hearing loss, more severe on right.)
The board recommended that plaintiff be returned to permanent limited duty, confined to continental United States, at duties not requiring good hearing, with avoidance of exposure to loud noises. The recommendation was approved November 12, 1945. Plaintiff was on leave of absence from October 25 to December 11,1945.
10. On December 11, 1945, plaintiff appeared before an army retiring board at Oliver General Hospital, and was found permanently incapacitated for active service, the cause of such incapacity being as follows:
1. Deafness, conductive type, right, moderate, secondary to Otitis Media incurred in 1923; hearing: Low conversational voice, right 14/20, left 20/20; whisper, right 1/15, left 15/15; Audiometer loss, right 80%, left 19%; watch, right 0"; left 10";
2. Ulcer, healed, in left lower anterior leg, with residual skin atrophy and discoloration, due to infection secondary to puncture by a cactus thorn incurred in Texas maneuvers in 1941. (Skin graft performed 1941 Station Hospital, Ft. Sam Houston, Texas.)
The board recommended service for plaintiff, if any, the following:
Permanent limited duty, in fixed installation, within continental limits of United States, with avoidance of exposure to loud noises or prolonged locomotion.
The board found that the impairment of plaintiff’s hearing had been aggravated by his service, and was an incident of his service.
However, on December 13,1945, plaintiff was ordered home to revert to inactive status by reason of disability.
11. On February 13,1946, the Surgeon General refused to concur in the findings of the army retiring board, and stated:
*222 3. The record reveals that this officer had otitis media and that a mastoidectomy was performed in 1923, before entering active duty. In 1925 marked diminution of auditory acuity was definitely present. His present incapacity may therefore well be the natural progression of a preexisting condition. This opinion was concurred in at McGuire General Hospital. Further confirmation of this view is supplied by the absence of any sudden or abrupt pathological event. The record also reveals that the ulcer is healed, and that the plastic repair is successful. This healed condition can hardly be termed incapacitating.
4. It is therefore the opinion of this office that the board may well find this officer incapacitated only by reason of deafness, and that said incapacity is not the result of an incident of service.
The Surgeon General recommended that the record be returned to the board for reconsideration of its findings.
By letter dated February 18,1946, the Adjutant General, by order of the Secretary of War, directed that the Army retiring board be reconvened for reconsideration of its findings in view of the remarks of the Surgeon General.
12. The Army Betiring Board reconvened at the same hospital on March 19,1946, and, after hearing additional testimony, adhered to its original decision and its recommendation. Plaintiff was relieved from active duty April 17,1946, by reason of physical disability.
13. On May 1, 1946, the Surgeon General again did not entirely concur in the findings of the board to the effect that the plaintiff was permanently incapacitated and adhered to his opinion that plaintiff’s incapacity “is not the result of an incident of service,” and recommended that plaintiff be found incapacitated for active service only by reason of deafness; that the cause of said incapacity “is not” an incident of service and has not been permanently aggravated by military service and that the incapacity “is not” the result of an incident of service.
14. On May 10, 1946, the Adjutant General referred the case to the Secretary of War’s Personnel Board for directions as to action to be taken. The assistant recorder of the Secretary of War’s Personnel Board on May 14,1946, acting “For the President, The Secretary of War’s Personnel Board,” returned the case to the Adjutant General with notation that *223 the findings of the Army Retiring Board of March. 19,1946, were disapproved and on May 17,1946, plaintiff was so advised by the Adjutant General. This letter further advised plaintiff of a right to have the case reviewed by the Secretary of War’s Disability Review Board as provided in Sec. 302 of P. L. 346,78th Cong.
15. On June 22,1946, plaintiff applied for a review by the Secretary of War’s Disability Review Board. The Secretary of War’s Disability Review Board convened on October 1, 1946, and affirmed the Secretary of War’s disapproval of the findings of the reconvened Army Retiring Board.
The findings of the Secretary of War’s Disability Review Board were as follows:
1. Colonel Leslie A. Prichard is permanently incapacitated for active service.
2. Cause of said incapacity is deafness, conductive type, moderate, right, secondary to Otitis Media, incurred in 1923.
3. The approximate date of inception of incapacitating defect was 1923.
4. Date officer became incapacitated for active service: November 1943.
5. The cause of said incapacity is not an incident of service and has not been aggravated by active service.
6. The incapacity is not the result of an incident of service. Additional findings: The ulcer condition is not incapacitating. Conclusion: Any increase of symptoms or additional physical findings of deafness while on active military service as a commissioned officer are not beyond the natural progress of the pre-existing ear disability and do not constitute permanent aggravation.
16. On October 1,1946, the Secretary of War approved the findings of the Secretary of War’s Review Board and under date of October 29,1946, the Adjutant General advised plaintiff as follows:
As a result of Army Retiring Board proceedings it was found that you were permanently incapacitated for active military service. Upon review in the War Department it was determined that such incapacity was not the result of an incident of service.
In consideration of your application dated 22 June 1946, the Secretary of War’s Disability Review Board, established under authority of Section 302, Public Law 346 — 78th Congress, approved 22 June 1944, has care *224 fully reviewed tbe findings and decision of tbe Army Betiring Board and tbe subsequent action of the War Department. The Secretary of War has instructed me to advise you that as a result of this review, and by direction of the President, the previous determination of the War Department is affirmed.
17. Plaintiff, under date of July 16, 1949, submitted to the office of the Adjutant General an application for review ■of the findings of the Army Disability Beview Board.
A board of officers convened on August 1, 1949, and considered the additional evidence submitted by plaintiff in connection with his application for a rehearing, dated. July 16, 1949. This board, concluded that plaintiff had not presented to the board new, pertinent, and material evidence bearing upon his case which, if previously considered, could have reasonably been expected to cause a finding other than the decision rendered by the Disability Beview Board, and a formal hearing was therefore denied. This decision was approved by the Secretary of the Army on August 1,1949.
18. The Adjutant General, by letter dated August 8,1949, advised plaintiff as follows:
This is in reference to the application with supporting evidence submitted for a rehearing of your case under the provisions of Section 302, Public Law 346 — 78th Congress, as amended.
Careful consideration has been given to the application with supporting evidence ana it has been determined that you have not presented new, pertinent, and material facts bearing upon your case which, if previously considered, could reasonably be expected to cause a finding other than the decision rendered at the original hearing. Therefore, your request for a rehearing is denied.
19. Plaintiff submitted an application to the Department of the Army, dated June 7, 1952, wherein it was requested that the Army Board for Correction of Military Becords, established pursuant to act of August 2,1946, 60 Stat. 837 as amended October 25,1951, 65 Stat. 655, make the following correction of plaintiff’s record:
My name should have appeared on the Army retirement list on April 17, 1946, with a notation that I was permanently disabled as a result of an incident of service *225 and I should have received Army retirement pay as a Colonel since Apil 17,1946.
20. Plaintiff’s application for the correction of his military record was received and docketed by the Army Board for Correction of Military Kecords who advised plaintiff on June 10,1952, in part as follows:
The receipt and docketing of the application means only that the application will be examined initially by the Army Board on Correction of Military Records to establish whether it is a case qualifying for review. You will be further advised whether or not a formal review is to be granted.
21. By letter dated April 1, 1953, plaintiff was advised by the Adjutant General as follows:
I have been requested by the Army Board for Correction of Military Records to make further reply to your request for a correction of your Army records.
A thorough review of your military and medical records, together with the information submitted by you, fails to reveal any evidence of error or injustice relative to the determination that you did- not have a disability, incurred in or aggravated by service, of a degree warranting retirement for physical disability, incurred in service, on 17 April 1946, the date of your separation from service.
The administrative procedures established by the Secretary of the Army for the guidance of the Army Board for Correction of Military Records provide that an application for a hearing by the board may be denied where a sufficient basis for review has not been established.
I regret to advise you that careful consideration by the Army Board for Correction of Military Records of your Army records, together with such facts as have been presented by you, fails to establish sufficient basis for a hearing of your case by the board. Therefore, in the absence of additional material evidence, no further action on your application is contemplated.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and his petition is therefore dismissed.