Charles D. **FOX**

v.

**UNITED STATES.**

No. 216–59.

United States Court of Claims.

Dec. 1, 1960.

Harry E. Wood, Washington, D. C., for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

DURFEE, Judge.

This case presents the question of whether or not a lump-sum readjustment payment under the provisions of section 265(a) of the Armed Forces Reserve Act of 1952, 66 Stat. 481, as amended, 70 Stat. 517, 50 U.S.C.A. § 1016, is payable to a reservist who is involuntarily released from further active duty as a commissioned officer and immediately re-

ports for active duty as a Regular Army warrant officer without any break in service.

Following a period of several years of enlisted service in the National Guard, plaintiff was ordered to active duty with the Army as a second lieutenant, National Guard of the United States in January 1941. He thereafter served on active duty in the Army as a commissioned officer continuously until November 1957, a period of almost 17 years. In 1954, while serving as a major, Army of the United States, plaintiff accepted an appointment as a warrant officer, junior grade, in the Regular Army. He was promoted to chief warrant officer (W-3), Regular Army, in November 1955.

At the time of his release from active duty on November 6, 1957, by reason of reduction in officer personnel strength, the plaintiff held a commission as lieutenant colonel, United States Army Reserve, but was serving as a lieutenant colonel, Army of the United States.

The same Department of the Army special orders which relieved plaintiff from further active duty as a commissioned officer effective November 6, 1957, stated that he was to revert to chief warrant officer, W-3, Regular Army the following day. The orders also said that his commissioned officer appointment in the Army of the United States was to terminate on November 6 and that his appointment as chief warrant officer, Army of the United States, was to be effective as of November 7, and that he was to report for active duty on that date. Finally, the orders stated that he was not entitled to readjustment pay on his separation from commissioned status. Pursuant to those orders he entered upon active duty as a warrant officer and has served in that capacity to the present time.

Section 265(a) of the Armed Forces Reserve Act of 1952 was added by a 1956 amendment, 70 Stat. 517, and provides, in pertinent part:

"Sec. 265(a) A member of a reserve component who is involuntarily released from active duty after the enactment of this section and after having completed immediately prior to such release at least five years of continuous active duty, except for breaks in service of not more than thirty days, as either an officer, warrant officer, or enlisted person, is entitled to a lump-sum readjustment payment computed on the basis of one-half of one month's basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the eighteenth year. For the purposes of computing the amount of readjustment payment (1) a part of a year that is six months or more is counted as a whole year, * * *."

Plaintiff sues for the equivalent of one-half of one month's pay for each of his 17 accredited years of active duty.

■ The facts are not disputed [1] and we are called upon only to decide whether or not the plaintiff qualifies for the readjustment payment within the meaning and intent of the Act.

■ Plaintiff's position is that he has satisfied each and every provision of law to entitle him to the statutory payment. He sees the statute as susceptible of only one interpretation and, therefore, resists any reference to its legislative background. As a basic principle in construing legislation it is undoubtedly sound to refrain from introducing extraneous considerations where the meaning of the

1. The fact that plaintiff was serving under an Army of the United States appointment at the time of his release from active duty rather than under his reserve appointment is no bar to compliance with the statute since enactment of the 1959 amendment to section 265, Public Law 324, 86th Cong., 1st Sess., found at 73 Stat. 596, which provides, in effect, that for the purpose of a readjustment payment the term "a member of a reserve component" shall include a member of the Army or Air Force without specification of component. The amendment is effective as of July 9, 1956.

law is clear and unmistakable. By no means do we reject this doctrine.

But words do not have meaning in and of themselves. They serve as a medium of communication only to the extent that they are given meaning by placing them in their proper perspective in relation to facts, circumstances, and attitudes. Words are symbols but their meanings are rarely, if ever, unequivocally clear without some necessary reference to extrinsics.[2]

On the subject of statutory interpretation this court had the following to say in the case of Otoe and Missouria Tribe of Indians v. United States, 1955, 131 F. Supp. 265, at page 271, 131 Ct.Cl. 593, at page 602:

> "Rules of statutory interpretation and construction are not legal maxims or ends in themselves, but are rather aids in discovering the meaning to be attributed to the language employed by the legislature. The application of any particular rule may well be affected by other rules in order to avoid absurd results. Whether a statute is to be construed strictly or liberally depends on which construction will make the legislative intent and purpose effective. A liberal construction will not justify an extension of the scope of the statute beyond the obvious contemplation of the legislature, even though the statute be purely remedial in nature and the construction proposed will produce a most desirable result. On the other hand, strict construction will not be applied to defeat the clear intention of the legislature or to produce an absurd result, unless absolutely unavoidable."

It would be a disservice, we think, to the parties, the legislature, and ourselves not to face the question of whether or not it was the intention of the Congress that the plaintiff and others in similar situations should receive readjustment payments after involuntary release from active officer duty. The defendant urges that the legislature intended that released reservists should receive this lump-sum payment only when completely severed from their military careers, that is, when their release was a prelude to their return to civilian life. A reservist who merely changes from one status and component to a different status and component, it insists, was never intended to be a beneficiary of this legislation.

Some evidence of the intent of the Congress is available to us in the report of the Senate Armed Services Committee (S.Rep. No. 2288, 84th Cong., 2nd Sess.) to accompany H.R. 9952, enacted as the statute which we are now considering. 1956 U.S.Code Cong. & Adm.News, 84th Cong., 2nd Sess., page 3061 et seq. We find at page 3062 that one purpose of the Act was "to provide a readjustment payment to reservists who, after having served on active duty for long periods of time, are involuntarily released at an age at which their usefulness to the Armed Forces is less than that of younger officers who are needed for current and future service * * *." This seems to suggest that the Committee report was referring to officers who suddenly found themselves faced with earning a living in the civilian community after a prolonged absence.

This belief is reinforced by certain portions of the "Justification" for the Act.

---

2. This thought was expressed in the following fashion by Lord Blackburn in River Wear Commissioners v. Adamson L.R. 2 A.C. 743 (1877) at page 763: "In all cases the object is to see what is the intention expressed by the words used. But, from the imperfection of language, it is impossible to know what that intention is without inquiring further, and seeing what the circumstances were with reference to which the words were used, and what was the object, appearing from those circumstances, which the person using them had in view; for the meaning of the word varies according to the circumstances with respect to which they were used."

"There is now no satisfactory method for providing readjustment pay or other monetary cushion to soften the transition to *civilian life* for those reservists who are involuntarily released. The absence of such an authority deters continued active duty beyond obligated periods and creates hardships for those persons who are actually released * *

" * * * Up to the point of 18 years of active service, reservists need protection against economic dislocation during the critical earning period of their lives. So long as our national policy requires reservists on active duty to augment the regular forces, some compensation to these reservists in *readjusting to civilian life* seems a justifiable element of the cost of national defense." (Emphasis supplied.)

At another point in the report, the lump-sum payment is characterized as severance pay. The terms "severance" and "severed" also appear in the subcommittee hearings on H.R. 6725 (the predecessor of the bill with which we are presently concerned) before Subcommittee No. 1, House Committee on Armed Services, 84th Cong., 2nd Sess. During those hearings the committee members, as well as witnesses from the Department of Defense and other interested organizations, indicated that they were discussing a bill which would ease the transition of released reservists from military service to civilian life. The Secretary of the Army, in forwarding the proposed legislation to the Speaker of the House on June 4, 1955, on behalf of the Department of Defense said:

"These older Reserve officers have been away from civilian life for an extended period and in some cases have been called away from their civilian occupations on two separate occasions during World War II and the Korean incident. The Department of Defense believes that they should be given an equitable payment upon involuntary release from active military duty to help them readjust to civilian life again."

In that communication, the Secretary likens the lump-sum readjustment payment to severance pay for Regular Army officers.

On the question of dual status (simultaneous membership in more than one component), which is the case as to the plaintiff, it is interesting to note that the Defense Department spokesman at the subcommittee hearings indicated that no lump-sum payment would be expected for a released reserve officer who reverted to Regular Army enlisted status.

We are constrained to conclude that the word readjustment as it was employed at the various stages of the legislative background to the Act, and in the Act itself, means an adjustment anew to the reservist's circumstances before he entered upon extended active duty, those of civilian life. The existence of a legislative intent of this nature makes it unnecessary to rule on the contention of the defendant that plaintiff, in fact, was not released from active duty because he continued to be a member of the Army at all times.

In passing, however, we must note that there is reason in this contention. The plaintiff concluded his period of active service as an Army of the United States officer and, with no intervening period of civilian life, thereupon commenced a period of active service as an Army of the United States warrant officer. In other words, his active duty in the Army continued without a break. There is certainly a question unresolved then, of whether or not the plaintiff has satisfied the terms of the statute even as he interprets it. He may have been required to accept a position involving a lower basic pay and, perhaps, a lowered social position but he was not summarily cast out into a civilian world, alien to him for many years, faced with the bleak prospect of securing a solid livelihood. This is the evil which we believe the Congress intended to correct when it passed the readjustment payment legislation.

For the foregoing reasons we conclude that plaintiff is not one of that class which was intended to benefit from the Act. The plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted. The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.