John A. **HENNEBERGER**

v.

The **UNITED STATES.**

No. 71–67.

United States Court of Claims.

Nov. 15, 1968.

Samuel T. Ansell, Jr., Washington, D. C., attorney of record for plaintiff. Gaines A. Tyler, Jr., and Ansell & Ansell, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

SKELTON, Judge.

The plaintiff, John A. Henneberger, filed suit in this case for $2,000, more or less, which he alleges he is entitled to under the provisions of the Armed Forces Reserve Act of 1952, as amended. The facts on which he bases his claim are as follows:

The plaintiff served as a commissioned officer (Lieutenant, junior grade) of the United State Naval Reserve under what is known as an active duty agreement from February 19, 1957, until September 13, 1964. On May 22, 1964, he wrote a letter to the Chief of Naval Personnel in which he requested that he be offered an active duty agreement for an additional period of one year to be served in Hawaii. This request was made in his letter in the following language:

\* \* \* \* \* \*

4. It is hereby requested that I be offered an active duty agreement for a period of one (1) year from the termination of my present agreement. It is also requested that this additional one (1) year be served at FAETU PAC Detachment Three, NAS Barber's Point, Hawaii. \* \* \*

On July 2, 1964, the Chief of Naval Personnel answered plaintiff's letter denying his request in the following language:

\* \* \* \* \* \*

2. Present policy provides that an Active Duty Agreement may not be issued to an officer who is in a "failed of selection" status in present grade. Since you are currently in this status,

238

you are not eligible for an Active Duty Agreement.

\* \* \* \* \* \*

On August 24, 1964, the plaintiff wrote another letter to the Chief of Naval Personnel asking that his request be reconsidered and leaving out all reference to service in Hawaii. His request was stated in the following language:

\* \* \* \* \* \*

2. In that the reason for disapproval of reference (b), could conceivably be remedied in a few months by means of selection, it is requested that the disapproval of reference (a) be reconsidered and an active duty agreement for a full regular tour be offered to me.

\* \* \* \* \* \*

4. The above request for a full regular tour of active duty is voluntary and obviates any former request not consistant [sic] with it.

This request for reconsideration was also refused by the Chief of Naval Personnel because the plaintiff was still in a "failed of selection status." The plaintiff continued to serve until September 13, 1964, at which time he was separated from the service in the grade of Lieutenant (junior grade), and on September 21, 1964, he made a claim for lump sum readjustment pay under the provisions of the Armed Services Reserve Act of 1952, as amended, which provides, in part, as follows:

(a) *Computation; deductions.*

A member of a reserve component who is involuntarily released from active duty after the date of enactment of this amended subsection and after having completed immediately prior to such release at least five years of continuous active duty, except for breaks in service of not more than thirty days, as either an officer, warrant officer, or enlisted person, is entitled to a lump-sum readjustment payment computed on the basis of

two months' basic pay in the grade in which he is serving at the time of release from active duty for each year of active service (other than in time of war or of national emergency hereafter declared by Congress) ending at the close of the eighteenth year. \* \* \* 1

It will be observed that the foregoing statute provides that a member of the reserve component who is involuntarily released from active duty after having completed immediately prior to such release at least five years of continuous active duty is entitled to a lump sum readjustment payment computed as stated in the statute. The plaintiff contended that he had met these requirements and was accordingly entitled to such payment. His request for this payment was denied by the Bureau of Naval Personnel of the Department of the Navy on November 23, 1964, in a letter which it sent to the plaintiff which stated as follows:

\* \* \* \* \* \*

2. A board of officers carefully considered all actions and events pertaining to your separation. After a review of your official record, and consideration by competent legal authorities, the board determined that you were not entitled to receive the lump sum readjustment payment.

\* \* \* \* \* \*

Thereafter, the plaintiff wrote a letter dated November 30, 1964, to the Chief of Naval Personnel requesting that he be advised the specific reason why the Navy had determined that he was not entitled to receive the lump sum readjustment payment. This request was answered by the Chief of Naval Personnel on December 21, 1964, by a letter which stated as follows:

Subj: Eligibility for readjustment pay; information concerning

Ref: (a) Your ltr dtd 30 November 1964
(b) Your ltr dtd 22 May 1964 with fwd end

1. 50 U.S.C. § 1016(a), 1958 edition, Supp. V.

(c) Your spdltr dtd 24 August 1964 with fwd end

1. Reference (a) requested information concerning your eligibility for readjustment pay. In references (b) and (c) you requested retention on active duty under the terms of an Active Duty Agreement.

2. Your requests as expressed in references (b) and (c) were disapproved because of your "failed of selection" status. Failure to receive an Active Duty Agreement does not preclude the retention of a reserve officer on active duty. Records in the Bureau of Naval Personnel do not indicate that you made, at any time prior to your release from active duty upon expiration of your obligated service, an unconditional request for extension on active duty. Accordingly, your release was not "involuntary" within the meaning of the statute authorizing lump sum readjustment payments.

\*　\*　\*　\*　\*　\*

The denial of the lump sum readjustment payment was affirmed by the United States Navy Finance Center and the General Accounting Office on the ground that plaintiff's separation from active duty on September 13, 1964, was voluntary and that under such circumstances he was not entitled to the claimed payment.

Thereafter, the plaintiff filed suit in this court alleging that he is entitled to the claimed lump sum readjustment payment and that the government's denial of his claim for the same was arbitrary, capricious, contrary to law, and predicated upon an erroneous interpretation of the law. The defendant answered and filed a motion for summary judgment. Thereafter, the plaintiff filed a cross motion for summary judgment and the case is presently before us on these motions.

The crucial point in the case is whether or not the plaintiff asked for an unconditional voluntary extension of active duty service in his letter of August 24, 1964, when he asked that the disapproval of his request for an active duty agreement be reconsidered and that an active duty agreement for a full regular tour be offered to him. The plaintiff contends that this was a request on his part for an unconditional extension of active duty service. On the other hand, the defendant says that this request for an active duty agreement was not an unconditional request for an extension of active duty service, but was a conditional request and that when it was refused by the Navy and the plaintiff was released from duty, his release was a voluntary release and not an involuntary one. The defendant points to the various statutes defining "involuntary release" and "active duty agreements" as well as regulations of the Navy covering the same in support of its position. The statutes are the following:

1. Armed Service Reserve Act of 1952, as amended (50 U.S.C. § 1016(h) (2), 1958 ed. Supp. V) which provides as follows:

(h) *Definitions.*

\*　\*　\*　\*　\*

(2) the term "involuntary release" shall include release under conditions wherein a member of a reserve component, who has completed a tour of duty, volunteers for an additional tour of duty and the service concerned does not extend or accept the volunteer request of the member for additional tour.

2. 10 U.S.C. § 679, which provides as follows:

§ 679. *Active duty agreements.*

\*　\*　\*　\*　\*

(c) Agreements made under subsection (a) shall be uniform so far as practicable, and are subject to such standards and policies as may be prescribed by the Secretary of Defense for the armed forces under his jurisdiction or by the Secretary of the Treasury for the Coast Guard when the Coast Guard is not operating as a service in the Navy.

The regulations involved are as follows:

Paragraph 044189–1, Navy Department Comptroller Manual

* * * The term "involuntarily released" includes release under conditions wherein a member of a reserve component, who has completed a tour of active duty, volunteers for an additional regular tour of duty and the service concerned does not extend or accept the volunteer request of the member for the additional tour; * *. When a member volunteers for a period of active duty contingent upon assignment to a particular type of duty or geographical location, or contingent upon being tendered a specific type of contract (e. g., Active Duty Agreement), he has, by his own action, placed restrictions on his requests which are incompatible with the requirement that he volunteer for an additional "regular" tour of duty and, consequently, should such conditional request be denied, may not be regarded as having been involuntarily released from active duty. * * *

Paragraph 8, BUPERS Instruction No. 1120.22C

Applications submitted in response to this Instruction will be considered by a continuing board of officers convened by the Chief of Naval Personnel. This board will meet as often as may be necessary to insure prompt consideration of all applications received. Within the numbers allocated, the board will recommend those officers to receive agreements whom they consider best qualified for retention on active duty.

It will be observed that 10 U.S.C. § 679, quoted above with reference to active duty agreements, authorizes the Secretary of Defense to establish standards and policies with reference to active duty agreements. Pursuant to this authority, the Secretary of Defense did promulgate regulations governing such agreements, the pertinent portions of which are set forth above from paragraph 044189–1, Navy Department Comptroller Manual and paragraph 8 BUPERS Instruction No. 1120.22C. It will be noted that such regulations provide that when a member volunteers for a period of active duty contingent upon assignment to a particular type of duty or geographical location or contingent upon being tendered a specific type of contract (e. g., active duty agreement), he has, by his own action, placed restrictions on his request which are incompatible with the requirement that he volunteer for an additional "regular" tour of duty and consequently should such conditional request be denied, he may not be regarded as having been involuntarily released from active duty. Clearly, the plaintiff's first request for an active duty agreement for service for one year to be performed in Hawaii was a conditional one, because it placed restrictions both geographical as well as a limitation of time on his requested tour of duty. The only question remaining to be decided is whether his request that the disapproval of his original request for an active duty agreement be reconsidered and that "an active duty agreement for a full regular tour be offered to me," was a conditional request or an unconditional request for further service. The defendant contends that it was a conditional request because the plaintiff requested an active duty agreement which is clearly defined in the regulations quoted above as being a request "contingent upon being tendered a specific type of contract (e. g., active duty agreement)."

The defendant also points out that the Navy regulation known as BUPERS INSTRUCTION 1120.22C, paragraphs 5, 6, 7, and 8, a, b, and c, confirm the fact that a request for an active duty agreement is a conditional request because such an agreement cannot be issued for a period of less than one year, and, during the period of such an agreement, the officer cannot be removed from duty inasmuch as the Navy is obligated by the agreement to allow him to serve the full term which is set forth in the agree-

ment. These regulations are as follows:

\*   \*   \*   \*   \*   \*

5. *Implementation.* The Chief of Naval Personnel will offer active-duty agreements to selected Reserve officers who are serving voluntarily on active duty beyond their periods of obligated service. In addition, all other Reserve officers may apply for active-duty agreements. Officers still serving periods of obligated active duty may request agreements to commence upon completion of obligated service. Reserve officers requesting voluntary recall to active duty may concurrently request an active-duty agreement.

6. *Duration of Active-Duty Agreements.* Agreements will be issued for periods of from 1 to 5 years' duration and fractions thereof. Agreements will not, however, be issued for periods of less than 1 year.

7. *Acceptance of Active-Duty Agreements.* Reserve officers who are directly offered active-duty agreements by the Chief of Naval Personnel have been prescreened by the board of officers mentioned in paragraph 9 below and have been recommended for retention on active duty. Acceptance by the officer concerned is, therefore, all that is necessary to make the agreement effective in each case.

8. *Method of Application.* Officers who have not received offers of an active-duty agreement may request an agreement in the following manner:

a. Applications will be submitted in letter form to the Chief of Naval Personnel (Pers–B72) via the commanding officer or reporting senior and should reach the Bureau of Naval Personnel within 4 to 6 months prior to the desired commencement date of the requested agreement.

b. The commanding officer or reporting senior shall include in his endorsement comment on the suitability of the applicant for continued service under the terms of an active-duty agreement. He should also make comment regarding any particular qualifications or abilities of the applicant.

c. Officers shall state in their applications both the desired duration of the requesterd active-duty agreement and the minimum duration they are willing to accept.

\*   \*   \*   \*   \*   \*

In addition to the above regulations, the Secretary of the Navy has provided for voluntary extensions of active duty (which is to be distinguished from service under an active duty agreement) by publishing regulations in the Bureau of Naval Personnel Manual, paragraphs C–15301 (Appendix B), governing the requirements for such voluntary extensions of active duty.[2]

According to these regulations, it is possible for an officer in the Navy to request a voluntary extension of his tour of duty for a definite or indefinite dura-

2. Section 3. VOLUNTARY EXTENSIONS OF ACTIVE DUTY C–15301 REQUIREMENTS

(1) Requests for voluntary extensions of definite or indefinite duration may be submitted by officers of all grades and code categories. Such requests are particularly desired, however, from officers in the grades of lieutenant and below in the 110X and 13XX code categories.

(2) Extensions for a period of less than twelve (12) months will normally not be granted unless unusual circumstances prevail or there exists an urgent need for the officer's services. This minimum period of extension is usually acceptable for ex-

tensions in present assignment. However, when reassignment to another activity is involved, an extension to cover a full tour length for the activity or area to which assigned will normally be required. When an extension of an indefinite duration is granted, it shall normally be construed to be for at least the minimum twelve (12) month period and shall be in addition to any previously incurred obligated service. Interim extensions may be granted in instances where official action is pending on requests for change of designator, transfer to the Regular Navy or for active duty agreements.

tion. However, this is different from an active duty agreement, because there is no contractual obligation created whereby the Navy is required to keep the officer in service for a definite period of time such as is the case where an active duty agreement is made.

■ The regulations discussed herein were reasonably designed to carry into effect the acts enacted by the Congress and were promulgated pursuant to the statutes. They have the force and effect of law. Ex parte Reed, 100 U.S. 13, 22, 25 L.Ed. 538 (1879); Prichard v. United States, 135 F.Supp. 420, 422, 133 Ct.Cl. 212, 216 (1955); Ludzinski v. United States, 154 Ct.Cl. 215, 230 (1961); Moran Bros., Inc. v. United States, 346 F.2d 590, 593, 171 Ct.Cl. 245, 249 (1965); Cohen v. United States, 381 F.2d 383, 388, 180 Ct.Cl. 647, 658, (1967).

It may be that when plaintiff made his request for reconsideration he thought he was making an unconditional request for a voluntary extension of active duty, because it will be noted that in paragraph 4 of his letter of August 24, 1964, he said, "the above request for a full regular tour of active duty is voluntary and obviates any former requests not consistent with it." However, this statement relates to and was made a part of the request made in paragraph 2 of his letter for an active duty agreement. If the plaintiff meant to make an unconditional request for a voluntary extension of duty with no strings attached, he should have done so in plain and unequivocal language. Under the circumstances the Navy was reasonably justified in concluding that the plaintiff was requesting and would accept nothing less than, an active duty agreement if he was to enter upon an additional tour of active duty in the Navy. In fact, that is exactly what he asked for.

■ We believe that the law is with the defendant and that the plaintiff cannot recover. His second request was, in our opinion, a conditional one because he asked for an active duty agreement.

A request for an active duty agreement is specifically listed as a conditional request by paragraph 044189–1 of the regulations, supra. It is also considered to be a conditional request by the regulations in BUPERS Instruction 1120–22C, supra, which provide that a definite period of time (not less than one year) is required in an active duty agreement and the Navy is obligated to retain the officer on duty for at least that period of time and cannot relieve him from duty until the period of his active duty agreement expires.

Inasmuch as plaintiff's request for further active duty was conditional and was not accepted by the Navy, his release from service was a voluntary release and not an involuntary one. According to 50 U.S.C. § 1016(a), supra, and the cited regulations, the plaintiff is not entitled to a lump sum readjustment payment unless he was involuntarily released from active duty. Since he was voluntarily released from active duty, he does not meet the requirements of the statute or the regulations and is not entitled to such payment. The government's denial of his claim was based upon a correct interpretation of the law and was neither arbitrary nor capricious.

Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

COLLINS, Judge (dissenting):

I respectfully dissent from the opinion of the majority in this case.

Prior to the termination of his tour of duty, plaintiff, a commissioned officer in the Naval Reserve with more than 5 years' continuous service on active duty, made two requests to the Chief of Naval Personnel for additional periods of active duty. The first request was for an active duty agreement for a 1-year period in Hawaii. In his second request plaintiff sought "an active duty agreement for a full regular tour," without specification of the length of the re-

quested tour, the type of duty, or the place in which he wished to serve. Both requests were denied on the ground that plaintiff was in a "failed of selection status." Plaintiff does not assert that the Navy was not within its rights in failing to extend or renew his tour of active duty because of his status.

Thereafter, plaintiff made a claim for lump-sum readjustment pay, but this was denied. That denial gave rise to the current dispute.

The applicable statute[1] provides in clear and unequivocal language that, after 5 years' continuous service on active duty, a member of a reserve component involuntarily released from active duty *or* who is not accepted for an additional tour for which he volunteered is entitled to a readjustment payment. A section of the predecessor of the current statute[2] provided that the term "involuntary release" would include release of a member of a reserve component who had completed a tour of active duty and who volunteered for an "additional tour of duty," but whose request was not accepted. The regulation[3] (apparently still in effect) promulgated under the earlier statute states, however, that requests contingent upon type of duty, location, or upon being offered a "specific type of contract (e. g., Active Duty

Agreement)" are conditional and restricted, and as such they are incompatible with a voluntary request for an additional "regular" tour of duty. Since plaintiff had requested an active duty agreement, the Chief of Naval Personnel found that plaintiff had conditioned his requests for additional active duty and that his release was consequently not "involuntary."

In the first place, it is noted that the new version of the statute, though not intended to effect a change in the prior substantive law,[4] apparently authorizes readjustment pay for either an involuntary release *or* the denial of an additional tour of duty for which the individual volunteers. Though the reason for this dichotomy is not explained in the legislative history, it would appear that plaintiff was qualified for a readjustment payment under the instant facts irrespective of whether he was "involuntarily released." Plaintiff clearly volunteered (in the ordinary sense of the word) for an additional tour, but his requests were denied. It can be assumed that Congress was aware in 1962 of the narrow definition of the term "involuntary release" used in the regulation. Therefore, Congress could well have intended, as it had originally, to provide for those who might not otherwise qualify under the regulation.

1. 10 U.S.C. § 687(a) (1964). This provision reads, in pertinent part, as follows:
"* * * a member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty as a commissioned officer, warrant officer, or enlisted member, is entitled to a readjustment payment * * *."
The predecessor of section 687 was section 265 of the Armed Forces Reserve Act of 1952, ch. 608, pt. II, 66 Stat. 481, *as added by* Act of July 9, 1956, ch. 534, 70 Stat. 517. Section 265 was subsequently codified as 50 U.S.C. § 1016,

which was repealed by the legislation enacting section 687. Act of Sept. 7, 1962, Pub.L. No. 87–651, §§ 102 and 307A, 76 Stat. 506, 526.

2. Act of July 9, 1956, ch. 534, § 265(h), 70 Stat. 517 (formerly codified as 50 U.S.C. § 1016(h)). The Senate Report accompanying the bill which eventually became, in part, 10 U.S.C. § 687 indicated that it was "not intended to make any substantive change in existing law." 2 U.S.Code Cong. & Ad.News p. 2456 (1962) (S.Rep. No. 1876, 87th Cong., 2d Sess.) Moreover, that report indicated that former section 1016(h) was being incorporated in new section 687(a), the provision involved here. Id. at 2457.

3. Paragraph 044189–1, Navy Dept. Comp. Manual.

4. See note 2 supra.

Secondly, in my opinion, even if the regulation's "involuntary release" standards apply in all cases, the defendant still cannot prevail. I am not persuaded, though, that the refusal of the Navy to authorize a readjustment payment on the basis of plaintiff's first request was unreasonable. But the Navy's refusal, under its regulations, to award plaintiff a readjustment payment after denial of his second request was, in my opinion, an action inconsistent with the purpose and intent of the controlling statute. To the extent the pertinent regulation conflicts with the purpose of the statute, the regulation is unreasonable and invalid.[5]

It is noted at the outset that while 10 U.S.C. § 687(a) speaks in terms of an additional "tour of duty," the regulation specifies "regular tour of duty." Defendant argues that a "regular tour of duty" is distinct from a tour of duty under an active duty agreement. The former, it is asserted, is of indefinite duration, and continued service thereunder is at the discretion of the Navy. An active duty agreement, on the other hand, establishes a contractual relationship between the serviceman and the Navy for a definite period of time. Although this interpretation of the regulation is not the only one possible, the court has accepted defendant's distinction. Because it accepts this broad ground for its decision, the majority therefore necessarily holds that a request for anything other than an indefinite extension of active duty at the Navy's discretion is not a "volunteering" within the meaning and purpose of section 687(a). It also impliedly holds that the restriction placed by the Navy upon requests by servicemen for additional tours of duty is reasonably consistent with the language and purpose of the statute.

The court correctly states the general rule that regulations designed to effectuate the purposes of the statutes under which they are promulgated have the force and effect of law, so long as they are reasonably consistent with the statutes. E. g., Moran Bros., Inc. v. United States, 346 F.2d 590, 593, 171 Ct.Cl. 245, 249, (1965); Ludzinski v. United States, 154 Ct.Cl. 215, 230 (1961). However, as we have recognized, a regulation is invalid when it clearly contradicts the terms or purpose of the statute. Fix v. United States, 368 F.2d 609, 614, 177 Ct.Cl. 369, 377, (1966); see Tasker v. United States, 178 Ct.Cl. 56 (1967); Estate of Bahen v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141, 145 (1962). The standard used to measure the consistency between the statute and the regulations thereunder is one of reasonableness. See, e. g., Cohen v. United States, 381 F.2d 383, 388, 180 Ct.Cl. 647, 658 (1967); Indiviglio v. United States, 299 F.2d 266, 156 Ct.Cl. 241, cert. denied, 371 U.S. 913, 83 S.Ct. 260, 9 L.Ed. 2d 173 (1962); cf. DeLano v. United States, 393 F.2d 517, 183 Ct.Cl. 379 (1968); Schellfeffer v. United States, 343 F.2d 936, 170 Ct.Cl. 178 (1965). And in determining whether a regulation reasonably effectuates the purposes of the controlling statute, the legislative history of the statute is pertinent, and may be controlling. Howard Indus., Inc. v. United States, 83 F.Supp. 337, 113 Ct.Cl. 231 (1949); see Lionberger v. United States, 371 F.2d 831, 178 Ct. Cl. 151, cert. denied, 389 U.S. 844, 88 S.Ct. 91, 19 L.Ed.2d 110 (1967).

The relevant legislative history (relied upon in part in Fox v. United States, 283 F.2d 951, 953–954, 151 Ct.Cl. 611, 615–616 (1960)) clearly sets forth the purposes of former section 1016:[6]

The bill has a dual purpose: * * * (2) to induce Reserve officers, by pro-

---

5. See, e. g., Fix v. United States, 368 F.2d 609, 614, 177 Ct.Cl. 369, 377 (1966). Plaintiff does not assert that the Navy was without authority to prescribe regulations under the pertinent statutes.

6. What was originally section 265 of the Armed Forces Reserve Act of 1952 was added by amendment in 1956. See note 1 supra. No meaningful changes in the substance of this statute have been effected since that time. See note 2 supra.

viding some measure of economic security, to remain voluntarily in the active service and thereby to reduce expensive personnel turnover and to increase the effectiveness of the armed services through the retention of competent and experienced officers.

\* \* \* \* \* \*

Today and for the foreseeable future, the Armed Forces require large numbers of reservists on extended active duty to meet the personnel needs of national security. To attract and retain the required number of capable reservists on active duty, a reasonable degree of security must be provided to them. There is now no satisfactory method for providing readjustment pay or other monetary cushion to soften the transition to civilian life for those reservists who are involuntarily released. The absence of such an authority deters continued active duty beyond obligated periods and creates hardships for those persons who are actually released.

\* \* \* \* \* \*

\* \* \* So long as our national policy requires reservists on active duty to augment the regular forces, some compensation to these reservists in readjusting to civilian life seems a justifiable element of the cost of national defense. A part of the justification for the bill flows from the obligation to treat these reservists fairly; at the same time, significant benefits may accrue to the Government. This measure could enhance stability in the officer structure of the Armed Forces. Capable Reserve officers, in the knowledge that they will be eligible for readjustment pay if involuntarily released, should have an increased feeling of security and should be more likely to remain on active duty for extended periods.[7]

It is clear from the above language that the statute was intended to be re-medial in nature, and, consequently, it is entitled to a liberal interpretation to effectuate its purposes. Oleson v. United States, 172 Ct.Cl. 9 (1965). Defendant does not contend (as indeed it could not) that plaintiff was not one of the class intended to be benefited by the act. It therefore becomes readily apparent that the Navy's constricted reading of the statute violates its express purposes in at least two obvious ways.

In the first place, the Navy itself has recognized the need, consistent with the statutory intent, to encourage members of the Reserve to remain on active duty. Pursuant at least in part to the policy set forth in the above-quoted legislative history, regulations[8] were promulgated to specifically set forth the right of all Reserve officers on active duty to apply for active duty agreements prior to the termination of their tours. A reservist entering upon his first tour of active duty is led to believe, by the plain words of the statute and by the regulations encouraging requests for agreements, that, should he be refused additional duty, he would at least have the security of a cushioning readjustment payment. Without the assurance of a readjustment payment, as Congress has noted, many Reserve officers might never be persuaded to request additional active duty. Thus, by penalizing plaintiff for requesting an active duty agreement, the Navy not only acts in a manner directly opposed to the policy implicit in one of its own regulations, but it directly defeats one of the basic purposes of the act.

Secondly, plaintiff was one of those officers Congress intended to benefit through a monetary easing of the transition from military to civilian life. Apparently, Congress thought of the readjustment payment somewhat as a reward for the tendering of additional service. Since plaintiff offered his services in compliance with the language and intent of the statute, it follows that the

---

7. 2 U.S. Code Cong. & Ad. News, p. 3062 (1956) (S.Rep.No. 2288, 84th Cong., 2d Sess.).

8. Bupers Instruction 1120.22C, Dept. of the Navy, Apr. 21, 1961.

Navy's interpretation of its own regulation thwarts this benevolent congressional aim.

If service under an active duty agreement were an unusual or unique manner in which to tender active duty, the court's holding here might be more understandable. However, not only are such agreements specifically authorized by Congress,[9] but the above-mentioned Navy regulations [10] indicate that these agreements are tendered to Reserve officers almost as a matter of course. It is therefore difficult to see how the Navy can consider plaintiff's second request to be an unreasonably conditioned and restricted tender.

The Navy's position, moreover, unreasonably discriminates against the plaintiff and others similarly situated who, in response to the open encouragement of the Navy, apply for active duty agreements. Anomalously, those who ignore the Navy's invitation and request only an indefinite retention on active duty fare better than those who conform to the Navy's regulations. The Government should not be permitted to so entrap the unwary.

Equally disturbing, however, is the apparent lack of justification for the difference in treatment between the two types of requests. Surely, it is convenient for the Navy to be readily able to dispose of unsatisfactory officers. Yet I fail to see by what authority a department of the Government can ignore the express dictates of Congress merely for its own convenience or because it believes it is more economical to do so.

Of course, the Navy must have the authority to ignore requests unreasonably conditioned. Were it otherwise, a serviceman with no intent to remain on active duty could submit a request so restricted that the Navy would clearly never consent to it. By so doing, the serviceman could become entitled to a windfall never intended by Congress. This is not the case here. Plaintiff made an unconditioned offer for the renewal of his agreement upon, apparently, the same terms as before.

Whatever restrictions the Navy might place upon conditional requests must be reasonable and consistent with the congressional purpose. In the instant case, the regulation is not only unreasonable, but it directly thwarts the congressional purposes without any meaningful justification. I would therefore hold invalid so much of paragraph 044189–1 as deprives Reserve officers of their entitlement to readjustment payments upon the sole basis that they have requested active duty agreements. Accordingly, I would find that plaintiff was involuntarily released and is entitled to a readjustment payment.

NICHOLS, Judge, concurs in the foregoing dissenting opinion.