Madden, Judge,
delivered the opinion of the court:
In our decision of April 7,1953, we concluded that plain *522 tiff was entitled to a Civil Service retirement annuity computed in accordance with the law as it existed at the time of his separation in 1946, since the more generous provisions of the Act of February 28,1948 (62 Stat. 53), were specifically denied persons in plaintiff’s category under the language of Section 8 of that Act. We then held that the law in effect when plaintiff was separated from the service in 1946 was the Act of May 29, 1930 (46 Stat. 468), as amended by the Act of January 24, 1942 (56 Stat. 13), and that under Section 5 of the amendatory statute, persons in plaintiff’s category were entitled to an annuity computed in accordance with clauses (1) and (2) of Section 4 (a) of that Act. The court had been furnished with a report of the Civil Service Commission [2] which stated that under the above Act in effect in 1946, plaintiff’s annuity was $293.52 a year, effective February 1, 1952, increased to $324.00 a year, effective September 1, 1952. In accordance with this report, the court rendered judgment for plaintiff in the amount of $360.22 which included payments due plaintiff up to and including March 31,1953.
On April 17, 1953, plaintiff moved the court to alter or amend its judgment of April 7,1953, on the grounds (1) that the court erred as a matter of law in finding that plaintiff’s annuity should be computed in accordance with the law in effect on the date of plaintiff’s separation from the service in 1946 rather than in accordance with the law in effect at the time plaintiff acquired title to his annuity in 1952, and in granting judgment for plaintiff on the basis of the earlier law; and (2) that the court erred as a matter of fact in finding that plaintiff was entitled to recover. $360.22 under the Act of January 24,1942 (56 Stat. 13) whereas a proper computation even under that Act would result in a higher figure.
In defendant’s opposition to plaintiff’s motion to alter or amend the court’s April 7th judgment, defendant responded to plaintiff’s assertion that the Civil Service Commission had erred in its computation of plaintiff’s annuity under the 1942 *523 Act. (Section 4 (a)), by stating that the Commission had certified to the defendant for the purposes of its opposition .that the rate employed in the court’s opinion had been .correct. On May 11, 1953, the Civil Service Commission .wrote to the Clerk of the Court concerning plaintiff’s objection to the rate employed in computing the annuity under Section 4 (a) and stated in part as follows:
Plaintiff argues that his rate should be approximately $4.00 a year higher. This slight discrepancy is occa-sione'd by two factors: first, he made no deposit m the retirement fund to cover his military service in excess of 30 years [the provision for “free” military credit was not enacted until February 28,1948, and does not apply in his case]; second, he overlooked the applicable provisions of the retirement law regarding the effect of failure to make the deposit.
The Commission hereby certifies that the rate and computation employed by the Court in its judgment of April 7, 1953, is correct.
A copy of the above letter was transmitted to plaintiff and, <jn June 2, 1953, plaintiff’s motion to alter or amend the court’s judgment of April 7, 1953, was overruled. On June ,3, 1953, plaintiff filed a motion, dated June 1, for leave to filó a memorandum of exceptions to the Civil Service Commission’s letter of May 11, 1953, and on June 17, plaintiff filed his motion for leave to file a motion for rehearing on his motion to alter or amend the court’s April 7th judgment.
In response to the court’s request, the Civil Service Commission addressed a further letter, dated October 5, 1953, to the Clerk of the' Court, supplementing the May 11th letter regarding the annuity computation and explaining the basis • for the computation and the reasons for the difference in . the results reached by plaintiff and the Commission although . both were applying the formula provided for in Section 4 . .(a).:of the 1942 Act. The court is still of the opinion that the result reached by the Civil Service Commission and re-..fleeted, in the judgment of April 7, 1953, is the correct one and will therefore not be altered or amended. . However, a certain; amount of understandable confusion has resulted .in connection with the computation which we shall presently attempt to dispel. In addition, we believe that plaintiff’s *524 other assignments of error should be discussed and disposed of. Accordingly, on October 14, 1953, plaintiff’s motion for leave to file memorandum of exceptions to the letter of May 11, 1953, from the Civil Service Commission, and his motion for leave to file motion for rehearing on plaintiff’s motion to alter or amend judgment, were allowed.
Plaintiff’s first assignment of legal error is that his annuity should have been computed in accordance with the Act of February 28,1948, which was the law in effect when plaintiff acquired title to his annuity. Section 8 of that Act is conceded by plaintiff to be controlling on the issue of whether plaintiff is entitled to the benefits of the other provisions of that Act. Section 8 provides as follows:
In case any officer or employee shall have been separated subsequent to January 23, 1942, and prior to the effective date of this Act [February 28, 1948] and have acquired title to annuity under Section 7 of the Act of May 29, 1930, as amended [by Section 5 of the Act of January 24, 1942], beginning after such effective date [February 28,1948], his rights shall be determined and annuity computed as though this Act had not been enacted. [Material in brackets supplied.]
Applying the above language to plaintiff’s situation, it appears (1) that plaintiff was separated from the service in 1946 which was subsequent to January 23, 1942, and prior to February 28, 1948, the effective date of the Act in question; (2) that plaintiff acquired title to an annuity under Section 7 of the Act of May 29,1930, as amended by Section 5 of the Act of January 24, 1942, providing as follows:
Should any officer or employee to whom this Act applies, after having served for a total period of not less than five years and before becoming eligible for retirement become separated from the service, such officer or employee shall be paid a deferred annuity beginning at the age of sixty-two years * * *. [Italics supplied.]
and (3) that plaintiff’s annuity began after the effective date of the 1948 Act when plaintiff reached the required age of 62 years in 1952. Under the circumstances just outlined, it would appear that plaintiff’s annuity would have *525 to be computed “as though this Act (the 1948 Act) had not been enacted.”
It is plaintiff’s position that he did not acquire title to his annuity until 1952 when this court adjudged him so entitled. In our April 7, 1953, opinion, it is true, we did say that plaintiff acquired title to his annuity in 1952 when he reached the age of 62. Upon further consideration, we believe that conclusion to have been in error. When plaintiff became separated from the service in 1946 his right to an annuity was determined by Section 5 of the Act of January 24, 1942, which amended Section 7 of the Act of May 29, 1930, above quoted. Thus, when plaintiff, after having served more than five years, but before becoming eligible for retirement, was separated from the service, he became entitled to, i. e., “acquired title” to, a deferred annuity, the benefits of such annuity to commence when he reached the age of 62.[3] That plaintiff, and others similarly situated, acquired upon separation from the service prior to February 28, 1948, but subsequent to January 23,1942, a vested title to a deferred annuity, is borne out by the legislative history of Section 8 of the Act of February 28, 1948. Senate Report 746 to accompany H. R. 4127, dated July 24, 1947, has the following to say about that portion of Section 8 of the 1948 Act with which we are concerned:
This section also provides that a former officer or employee who presently holds a vested title to a future annuity shall retain this right * * *. [Italics supplied.][4]
Conference Report No. 1370, has the following to say about that portion of Section 8:
*526 Under section 8 of tbe House bill the annuities of. employees who are separated prior to the effective date-of the bill, and who have deferred annuity rights but who have not yet reached the age at which their annuities will become payable, would be computed under the new formula contained in section 4 except that if the employee was involuntarily separated and elected-to take a reduced annuity beginning at age 55, the reduction would be figured on an actuarial basis as is the case under existing law. Under the conference agreement the right to annuity and the computation thereof would be governed entirely by existing law. [p. 1115, U. S. Code Congressional Service, 80th Cong. 2d Sess., 1948, 2, Pages 983-End].. [Italics supplied!]
Finally, language in the first paragraph of Section 8 would appear to exclude plaintiff from the benefits of the rest of the Act. The first paragraph of that section provides certain additional benefits for retired employees already on the annuity rolls and receiving annuity payments at-the time of the 191(8 Act. The last sentence of that paragraph provides:
Except as provided in this paragraph, the amendments made by this Act shall not apply in the case of officers and employees retired prior to the effective date of this Act.
The succeeding paragraph, quoted earlier in this opinion, then provides that persons retired prior to the effective date of the Act but whose annuities would not begin until after such effective date, were also excluded from the increased benefits provided for in the 1948 Act.
We conclude that , the circumstances of plaintiff’s case bring him squarely within the exclusion spelled out in Section 8 of the 1948 Act and that his annuity must be computed in accordance with the law in existence in 1946. To the extent that we now determine plaintiff to have acquired title to a deferred annuity under the 1942 Act upon his separation from the service in 1946, our previous decision of April 7, 1953, is amended and superseded by what we have said herein.
Plaintiff’s next assignment of error is that if his annuity is to be computed in accordance with the law in effect at the time of his separation from the service in 1946, the *527 court erred in making the computation solely under the provisions of clause (a) of Section 4 of the Act of May 29, 1930, and without the benefits provided for in the more generous provisions of clause (b) of Section 4 which were added to the Act by amendment on January 24, 1942.
Section 4 of the Act of May 29, 1930, as amended, provides for the method of computing retirement annuities. Clauses (a) and (b) of Section 4 set forth two methods of computation in part as follows:
(a) The annuity of an employee retired under the provisions of the preceding sections of this Act shall be a life annuity, terminable upon the death of the annuitant and shall be composed of (1) a sum equal, to $30 for each year of service not exceeding thirty: * * * and (2) the amount of annuity purchasable with the sum to the credit of the employee’s individual account as provided in section 12 (a) hereof, together with interest at 4 per centum per annum * * *.
(b) The total annuity paid shall in no case be less than an amount equal to the average annual basic salary, pay, or compensation, not to exceed $1,600 per annum, received by the employee during any five consecutive years of allowable service at the option of the employee, multiplied by the number of years of service,not exceeding thirty years, and divided by forty; nor shall such total annuity paid be less than an amoumt equal to the average annual basic salary, pay, or compensation received by the employee during any -five consecutive years of allowable service at the option of the employee, multiplied by the number of years of service, not exceeding thirty-five years, and divided by seventy.
The above-quoted italicized portion of clause (b) was added to the law by the amendment of January 24, 1942. It is plaintiff’s position that clause (b) modifies the computation set forth in (a) and that its application is mandatory in all cases where a higher annuity would result therefrom.
If Section 4 were to be considered alone and without reference to other provisions in the Civil Service Retirement Act, plaintiff’s position would be sound. However, reference to other portions of the Act casts considerable doubt upon plaintiff’s arguments.
*528 Section 4 provides merely for the method of computing the annuities of officers and employees who have met the eligibility requirements set forth in other sections of the Act. Section 1 of the Act defines the eligibility requirements for superannuation retirement. Section 6 defines the eligibility requirements for disability retirement. Section 7, prior to the 1942 amendment, defined the eligibility requirements for retirement of persons involuntarily separated from the service before becoming eligible for retirement under the conditions defined in Section 1 (superannuation retirement). Each of these eligibility sections provided specifically that the annuity to be paid the persons qualifying thereunder should be computed as provided in Section 4 of the Act.
The Act of January 24,1942 (Section 5), amended Section 7 of the Act of May 29,1930, which had applied only to persons involuntarily separated from the service before qualifying for retirement benefits under Section 1 of the Act. With respect to such involuntarily separated persons, the amendment reduced the number of years of service required for eligibility from fifteen years to five years. It still provided, however, that such involuntarily separated persons should have an immediate annuity computed as provided in Section 4 of the Act. The amendment also added to the law an entirely new provision whereby retirement benefits were conferred upon persons who voluntarily left the service after serving not less than five years but before becoming eligible for retirement benefits under other provisions of the Act. In the case of these employees, however, the amendment specifically provided that the annuity to which they were entitled was a deferred annuity to begin at the age of sixty-two years, and was to be computed “as provided in clauses (1) and (2) of Section 4 (a) of the Act.”
The circumstances of plaintiff’s case appear to place him squarely within the language of the first clause of Section 5 [5] of the Act of January 24, 1942, amending Section 7 of the *529 Act of May 29, 1930. Plaintiff had served more than five years but less than the number of years required by other portions of the Act to render him eligible for retirement. His separation from the service was not involuntary. The amendment specifically provides that the annuity of such person shall be computed as provided “in clauses (1) and (2) of Section! (a) of this Act.”
Considering all the eligibility sections of the Act and the language of the 1942 amendment to Section 7 in particular, it seems clear that Congress intended to confer retirement rights on persons in plaintiff’s category, but that the annuity to which such person became entitled was to be computed on a less generous basis than the one provided for persons (1) who had served the required number of years and qualified for superannuation retirement, (2) persons who qualified for disability retirement, and (3) persons who, through ño fault of their own were involuntarily separated from the service before qualifying for superannuation retirement.
We conclude that plaintiff is limited to the computation provided for in Section 4 (a) of the Act.
Finally, plaintiff urges that if he must be content with the computation provided for in Section 4 (a), the amount actually due plaintiff is slightly more than the sum awarded in this court’s April 7th decision based on the computation made by the Civil Service Commission.. Application of the formula contained in Section 4 (a) (1) does result in a slightly higher figure'than that certified by the Commission. Accordingly, the Clerk of this Court asked the Commission to explain the discrepancy. In a letter from the Commission dated May 11, 1953, addressed to the Clerk of the Court, the Commission stated that its computation was correct and that plaintiff had apparently “overlooked the applicable provisions of the retirement law regarding the effect of [his] failure to make the deposit [in the retirement fund]”.
The Commission’s letter did not state what “applicable provisions” were referred to and plaintiff concluded that the Commission must have been referring to that portion of Section 9 of the Act which provides that notwithstanding an employee’s failure to make deposits in the retirement fund he should have credit for all services rendered but that his *530 annuity should be reduced “by the amount such deposit would purchase if made, unless the employee shall elect to eliminate such service entirely from credit under the Act.” Plaintiff then contended that the reduction referred to in Section 9 of the Act could not be applied to the fixed-rate portion of an employee’s annuity as provided for in Section 4 (a) (1). Further inquiries made at the Civil Service Commission reveals [6] that the reduction complained of was not the result of the application of the quoted portion of Section 9 of the Act, but rather of another portion of Section 9 which required the deduction of $1 per month from an employee’s individual account. This $1 a month, or so-called “tontine” deduction was to be made from amounts deposited in the retirement fund by the employees themselves. The “ton-tin e” provision was first enacted in 1930 in the Act of May 29 (46 Stat. 468). That Act increased the maximum annuity payable from $1,000 per annum to an amount to be computed on a basic salary of $1,600 per annum. No corresponding increase in the salary percentages required of employees t.o be deposited in the retirement fund was provided for, but in lieu thereof employees were required to donate $1 per month for the common benefit of the retirement fund (Section 9). The purpose of the deduction was to make the bene *531 ficiaries under the Act share with the Government in the added cost of the increase in individual annuities provided for in that Act, without altering the dollar amounts then being withheld from salary payments in accordance with the percentages provided for in the earlier law. Section 12 (a) of the Act provided that amounts withheld from the pay of employees for credit to the civil service retirement and disability fund covering service from and after the effective date of the 1930 Act, less the sum of $1 per month, should be credited to the individual account of the employee. The tontine provisions in Sections 9 and 12 (a) remained in the law until the passage of the Act of February 28, 1948 (62 Stat. 48).
Plaintiff never made deposits in the Civil Service Retirement Fund and accordingly no tontine could ever be deducted from his account.[7] Plaintiff’s annuity is paid entirely from the Government’s contribution to the fund. However, the Civil Service Commission has administratively determined that the tontine payments by all beneficiaries of the retirement law was required by law and that where, as here, there is in existence no fund made up of an employee’s own contributions from which the tontine may be collected, the employee’s annuity based entirely on contributions by the Government must be reduced to take care of the tontine. Inasmuch as plaintiff herein benefited from the increased annuity provided by the Act of May 29, 1930, which Act also provided for the tontine deduction to help pay the cost of the increased annuity, we do not think that either the letter or spirit of the law is violated by the adjustment of his fixed-rate annuity (Section 4 (a)) to indirectly collect the tontine.
General Prentiss’ allowable service extended from November 1943 to August 31,1946, a period of thirty-four months. Tontine payments during this period would have amounted to $34 which sum would have purchased, under established actuarial tables, an annuity of $4 per year and it was this *532 amount by which the Civil Service Commission adjusted plaintiff’s rate of annuity.[8]
Plaintiff’s motion for rehearing on- its motion to alter or amend the' court’s judgment of April 7, 1953, is denied.
To the extent indicated herein, our decision of April 7, 1953 (125 C. Cls. 67), is modified and supplemented.
It is so ordered.
Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.

 This report was contained in a letter dated November 24, 1952, from the Civil Service Commission to the Comptroller General and transmitted to the court by the General Accounting Office.

 Senate Report No. 921 to accompany H. R. 3487 (Act of January 24, 1942), dated December 22,1941, states in part as follows:
“Section 5 amends section 7 of the existing act by providing annuity benefits for those who are separated after an aggregate of at least 5 years of service, such benefits to commence at age 62, * * *. * * * under the amended provision the security of employees who leave the Government after 5 years of service is provided for by granting a benefit on the service performed to be enjoyed at a time when optional retirement benefits are granted those with longer service.” [Senate Reports Vol. 4, 77th Cong. 1st Sess., 1941-1942, Serial No. 105461.)

 P. mi, U. S. Code Congressional Service, 80th Cong. 2d Sess., 1948, % pages 983-End.

 Section 7, as amended, provides:
“Should any officer or employee to whom this Act applies, after having served for a total period of not less than five years and before becoming eligible for retirement become separated from the service, such officer or employee shall be paid a deferred annuity beginning at the age of sixty-two years, computed as provided in clauses (1) and (2) of section 4 (a) of this Act.”

 The following letter, dated October 5, 1953), from the Civil Service Commission was received by the court:
“I am supplementing Chairman Young’s letter of May 11th regarding annuity computation in connection with the case of Augustin M. Prentiss v. The United States, No. 103-52.
“Under the Court’s judgment of title, General Prentiss’ rate is governed by that provision in section 4 (a) of the Act of May 29, 1S30, according (1) $30 a year for each year of service plus (2) the sum purchasable with the Individual account (together with interest). However, the total sum contributed to the fund is not credited to the person’s individual account, but only the balance remaining after $1.00 has been withheld for each month or major fraction thereof of service from and after July 1, 1930. This $1.00 a month, generally referred to as ‘tontine,’ is forfeited to the united States and operates to reduce the Government’s liability to that extent as regards its share of the annuity. • This tontine charge was required by law in all cases, and for periods when the indebtedness had not been satisfied it was administratively determined that the Government’s share of annuity must be reduced by the value thereof.
“As regards the instant case, General Prentiss owes $34.00 (November 3, 1943, to August 31, 1946) toward the Government’s annuity of $297.50 ($30 multiplied by his service period). This sum purchases, under established actuarial tables, $4.00 a year; deducting this amount, and making the balance divisible by 12, produces the rate of $293.52 as certified.”

 This circumstance was pointed out by plaintiff in his motion for leave to file a memorandum of exceptions to the letter of October 5, 1953 from the Civil Service Commission, -which motion was allowed by the court on October 28, 1953.

 In his memorandum of exceptions filed October 28, 1953, plaintiff contends that he should have been extended the option of paying the tontine rather than suffer the reduction of $4 a year in his annuity. It should be noted that under the provisions of the Civil Service Retirement Act, no beneficiary was given the option of paying the tontine as such separately, i. e., over and above the amount withheld from his salary. Thus, the annuities of all such beneficiaries were less than they would have .been if credit had been allowed for' the entire amount actually withheld. In this respct, plaintiff'is in no different position than that of any other beneficiary under the Act.