Margaret E. SCHELLFEFFER

v.

The UNITED STATES.

No. 230–63.

United States Court of Claims.
April 16, 1965.

---

Dayton M. Harrington, Washington, D. C., for plaintiff. Max Frank Deutz, Los Angeles, Cal., of counsel.

Robert R. Donlan, Kensington, Md., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

Plaintiff is a civil service annuitant who asks for greater retirement benefits than the Civil Service Commission is willing to give her. With credit for over twenty-three years of federal service, she voluntarily resigned from her government job in August 1953 when she was 55 years of age.[1] Her retirement rights were governed by the Civil Service Retirement Act of May 29, 1930, 46 Stat. 468, as amended, now 5 U.S.C. § 2251 *et seq.*, under which she could obtain a federal annuity beginning the first of the month following the day when she became 62.[2] She reached that age on July 9, 1960, and on August 1, 1960, began to receive an annuity of $151 per month. Since January 1, 1963 her monthly payments have been $156. This increase has been paid under Part III of Public Law 87–793, 76 Stat. 832, 868 (the Postal Service and Federal Employees Salary Act of 1962), providing additional benefits for federal annuitants from the beginning of 1963 (see footnote 7, infra). Plaintiff's claim is that she is also entitled to an increase under Public Law 85–465, 72 Stat. 218, enacted on June 25, 1958 (before she was eligible to receive immediate retirement pay). The Civil Service Commission rejected this position, and plaintiff has exhausted her

---

1. She did not thereafter engage in any remunerative work.

2. Since she did not have 30 years of service in 1953, she was not entitled to an immediate (but reduced) annuity, even though she was 55 years old.

remedies within that agency. The issue is purely one of the meaning and operation of Public Law 85–465.

That statute, which became law in 1958 before plaintiff attained 62, provides in the portion said to benefit her (Section 1(a), 72 Stat. 218).:

"That (a) the annuity of each retired employee or Member of Congress who, on August 1, 1958, is receiving or entitled to receive an annuity from the civil service retirement and disability fund based on service which terminated prior to October 1, 1956, shall be increased by 10 per centum, but no such increase shall exceed $500 per annum." [3]

Plaintiff reads this section as necessarily increasing the annuity payable to her from August 1960. She says that in 1958 she was already a "retired employee" because she had left the federal service in 1953, that she was "entitled to receive an annuity" because her right to a deferred annuity at age 62 was already fixed by the 1930 Retirement Act, and that her service had admittedly "terminated prior to October 1, 1956." She fulfills, in her view, every requirement of the terms of the 1958 Act and was therefore qualified for a larger annuity when her payments commenced in 1960. Defendant, of course, disputes this reading of the surface of the Act.

In addition, plaintiff relies on the general design of the modifications Congress made during the 1950's in the annuity system for retired federal employees, as well as on the particular legislative history of the 1958 statute. In 1956 Congress changed the Civil Service Retirement Act of 1930 to grant, effective October 1, 1956, an average increase of about 25 percent in the retirement benefits of federal annuitants who based their entitlement on service terminating *after* October 1, 1956. Civil Service Retirement Act Amendments of 1956, Title IV, § 401, 70 Stat. 736, 743. In 1955 and 1956, Congress also increased the salaries of active federal employees and officers (thus raising the retirement pay of those who continued to serve for some time). Federal Employees Salary Increase Act of 1955, 69 Stat. 172; Federal Executive Pay Act of 1956, 70 Stat. 736. These various pieces of legislation took care of the annuities of the federal employee who left the service after October 1, 1956, but they did not aid either those whose annuities had already begun by that date, or those, like Mrs. Schellfeffer, who had separated themselves from the service but were not yet eligible for their deferred annuities. These two groups were left with the annuity scales of the older legislation. Plaintiff argues that the 1958 Act was intended to elevate the retirement benefits of both of these omitted classes, so that all federal employees—past, present, and future—would be granted a larger annuity on retirement. She assesses the legislative history as sustaining that position. The defendant's answer is that Congress, in the 1958 statute, was concerned only with the first group (employees who were already receiving or were already eligible to receive annuities on October 1, 1956); the defendant sees the explanations in the Committee reports and on the floor as confined to that particular class. The Government also cites the general pattern of recent annuity-increasing legislation as showing that the 1958 Act benefited only persons who already received, or were ready to receive, an immediate annuity—a category to which plaintiff concededly does not belong.

Putting aside for the moment the words of the 1958 Act, we examine its background, from which the parties draw such competing inferences. In 1942, for the first time, Congress provided that federal employees who *voluntarily* left the service with five years of employment, but who were not yet eligible for an immediate annuity, could have a de-

---

**3.** Section 3(a) provides: "An increase in annuity provided by subsection (a), or clause (1) of subsection (b), of the first section of this Act shall take effect on August 1, 1958. An increase in annuity provided by clause (2) of such subsection (b) shall take effect on the commencing date of the survivor annuity."

ferred annuity when they reached 62. See Prentiss v. United States, 117 F. Supp. 200, 206, 126 Ct.Cl. 521, 528, (1953). At that time it was recognized that such persons were likely to take other jobs before they gave up all work, and therefore would probably be covered by the social security system as well as the federal retirement program. See H. Rept. No. 1285, 77th Cong., 1st Sess., pp. 4, 5. In 1948 came the first increase (after 1942) in existing civil service annuities. Section 8, Act of February 28, 1948, 62 Stat. 48, 52. It was carefully limited to those "retired on annuity" before April 1, 1948—a phrase clearly indicating that the person had to be actually on the annuity rolls by that time. See H.Rept. No. 888, 80th Cong., 1st Sess., pp. 5–6, 14; S.Rept. No. 143, 80th Cong., 1st Sess., p. 4; 93 Cong.Rec. 9600, 9601. Former employees with rights to a future annuity retained that right (S.Rept. No. 746, 80th Cong., 1st Sess., pp. 5–6; S. Rept. No. 143, supra, p. 4; H.Rept. No. 888, supra, p. 6), but their benefits would be governed by the then existing law (H. Rept. No. 1370, 80th Cong., 2d Sess, p. 15 (conference report)). See Prentiss v. United States, 117 F.Supp. 200, 203–05, 126 Ct.Cl. 521, 524–26 (1953). The Senate originally accepted, without discussion,[4] a proposal to give these deferred annuitants the same benefits as were being accorded to those already on the rolls (94 Cong.Rec. 487), but this amendment was rejected by the conference committee (H.Rept. No. 1370, supra, p. 15). In explaining the general theory of the conference agreement on this and other aspects of the measure, Senator Taft pointed out one reason for treating deferred annuitants differently (94 Cong. Rec. 1744):

"I do not think we want to encourage people to separate from the service voluntarily before age 60 or 62. I do not think it would be good policy to encourage that or to have that done. Ordinarily a man who retires voluntarily at age 55 does so because he has a better job somewhere else. That is perfectly proper, except that under those circumstances he would receive the salary for the better job when age 55 to age 62, and then would receive the full annuity beginning with age 62. So such men are well off."

In 1952, Congress again raised annuities, covering once more only those receiving or eligible for an immediate annuity at the effective date of the increase. Act of July 16, 1952, 66 Stat. 722. That this was Congress's definite purpose is clear from the legislative history. The Senate Committee was told at the hearings that the cost of the increase would decline "as time went on, because there would be less people";[5] this could not be true if the class of then-existing deferred annuitants was covered. The Civil Service Commissioners plainly conveyed their view that the bill included only employees already on the annuity rolls (see Hearings, supra, at pp. 320, 332). The discussion on the floor of the House referred to that group alone. See 98 Cong.Rec. 8965–8970.

The next general increase, in 1955, did expressly cover some future annuitants—those who would commence receiving annuities during the relatively short period between the effective date of the increase (October 1, 1955) and December 31, 1957. Act of August 11, 1955, 69 Stat. 692. For this group, the raise was to be at a decreasing rate, depending on the date the annuity was to begin. Congress was quite deliberate in adopting this limited coverage of future annuitants. S.Rept. No. 1176, 84th Cong., 1st Sess., pp. 1–2.

4. Senator Taft, a sponsor, said (94 Cong. Rec. 487): "Mr. President, I am not perfectly certain of the effect of the amendment, but I am willing to have it placed in the bill and be taken to conference with the House conferees and there worked out."

5. Hearings before a Subcommittee of the Committee on Post Office and Civil Service, United States Senate, 82d Cong., 1st and 2d Sess., March 1951 and April 1952, on S. 2968, p. 341.

It was felt that employees retired after December 31, 1957, would automatically receive higher retirement compensation because of the larger pay granted them (early in 1955) by the Federal Employees Salary Increase Act of 1955, supra. The purpose of the 1955 annuity-increase statute was to give some comparable help to those who could not reap the advantage of the new salary levels. 101 Cong.Rec. 12620.

We come now to the particular history of the 1958 Act on which plaintiff must rest her claim. The relevant part of the Senate bill (S. 72) referred to *"each individual*, who on or prior to October 1, 1956 was receiving or entitled to receive an annuity" (emphasis added). See S. Rept. No. 706, 85th Cong., 1st Sess., p. 1; 104 Cong.Rec. 5035. The comparable House Bill (H.R. 607), as reported, used "retired employee" instead of "each individual." See H.Rept. No. 1211, 85th Cong., 1st Sess., pp. 1, 5; 104 Cong.Rec. 6092. The House Report stated that the House version covered those "who were *on the annuity roll* on or before October 1, 1956", those "who retired *with annuity* beginning on or before October 1, 1956"; and the committee added: "Employees retired after the 1956 Act became effective receive no increase." In discussing the proposal, the report accepted the view that it is the duty of Congress, "when adjusting the current pay of government employees, or when liberalizing the benefit formula for future annuitants, to re-examine the benefits paid to *annuitants already on the rolls* with a view to adjusting their annuities as warranted." H.Rept. No. 1211, supra, pp. 1, 3, 5 (emphasis added).[6] The House amended the Senate bill to incorporate its own conception. 104 Cong.Rec. 6092,

10536. The conferees accepted the House term, "retired employee," and the Statement of the House Managers pointed out that the conference measure, "with respect to the identification of the class of annuitants who will receive annuity increases", was to the same effect as the House amendment—covering "each employee who retired with an annuity, or entitlement thereto, beginning on or before October 1, 1956, the effective date of the Civil Service Retirement Act Amendments of 1956." H.Rept. No. 1848, 85th Cong., 2d Sess., p. 4; see also, 104 Cong.Rec. 10536. We have been referred to nothing in the legislative history which points solidly to the coverage of plaintiff's class. The references to "former employees", "retired employees", and "federal retirees" (see H.Rept. No. 1211, supra; 104 Cong.Rec. 5033, 10537, 10986) can all be read, easily, as referring only to such employees who were already on the annuity rolls or had an immediate entitlement to retirement payments. It takes a very free and imaginative reading of the Congressional record to find any support for plaintiff's position. In context, the relevant discussion all relates to the then existing body of annuitants.

■ The pattern of annuity-increases, which we discern in this history from 1942 through 1958, requires Section 1(a) of the 1958 Act to be confined to annuitants already on the rolls (i. e., actually receiving an annuity or fully entitled to an immediate annuity) on August 1, 1958 (the date specified in the section). That is the general class which Congress covered in its prior enactments increasing annuities for persons no longer working for the Government. When Congress, in 1955, did wish to in-

---

6. The House report also said (p. 2): "The reported bill provides a moderate, fair, and reasonable annuity increase for those civil service retirement annuitants and survivors who *now* are receiving the smaller annuities and who most need additional income to cope with the continued upward spiral in costs of living. * * * The committee emphasizes that the increases provided by this legislation will inure to the benefit of those annuitants and survivors who face the greatest need and whose incomes in many instances are inadequate to maintain the decent standard of living to which retired employees of the Government are entitled * * * These annuitants in small, fixed incomes, are the real victims of inflation" (emphasis added).

clude a special group of future annuitants, it made separate, specific, and limited provision for them. The 1958 Act fits squarely into this design. Its history does not suggest any wider coverage, such as a purpose to include *all* persons not benefited by the 1955–1956 pay and retirement legislation; rather, the affirmative indications are that Congress deliberately intended, here too, to restrict the increase to those persons who already were or should be on the annuity rolls.

Congress has had its reasons for this consistent position.[7] As Senator Taft pointed out in 1948, supra, federal employees who resign before they are eligible for an immediate annuity are likely to seek another job outside the Government, often a better job; they will then get the benefit of the higher pay of that outside position as well as of coverage by the social security system, in addition to the federal retirement benefits to be paid when they reach 62. If Congress were to raise the benefits of these people every time it increased annuities it would be giving the same treatment to employees who continued to work for the Federal Government for long periods (usually until they were at least 62) and those who left, after relatively short periods of service or at a relatively early age, for the more plentiful pastures of private life.[8] There would be an impetus to early resignation and a deterrent to a career in the federal service which ex-tended until the end of one's working days.

The words of the 1958 Act harmonize with the Congressional purpose, as we thus gather it from the immediate history of the statute and its background. Section 1(a) provides an increase for the "retired employee" as of August 1, 1958. To be eligible for that increase, Mrs. Schellfeffer had to be a "retired employee" at that time. But she was not yet a "retired employee." She was simply a former federal employee who had resigned from the Government but had not yet retired[9]—in the sense in which that concept has been used in the federal service. Retirement comes when the individual is ready for an immediate annuity, not before. That is the meaning this court has generally given the term (cf. Nordstrom v. United States, Ct.Cl., 342 F.2d 55, decided March 12, 1965; Garrott v. United States, Ct.Cl., 340 F.2d 615, decided Jan. 22, 1965; Lawrenson v. United States, 153 F.Supp. 790, 139 Ct. Cl. 370 (1957); Prentiss v. United States, 117 F.Supp. 200, 126 Ct.Cl. 521 (1953)) and, even apart from the legislative history, we think it is the meaning Congress intended. If plaintiff were right, every person who resigned from the service after five years (the minimum time for entitlement to a deferred annuity) would be a "retired [federal] employee", even though he had just begun his working life and thereafter labored for many years in some private capacity.

---

7. Section 1101(a) of Public Law 87–793, the Act of October 11, 1962, 76 Stat. 832, 868, which again increased annuities (effective January 1, 1963), is likewise confined to existing annuitants. See S.Rept. No. 2120, 87th Cong., 2d Sess., p. 34; H.Rept. No. 2532, 87th Cong., 2d Sess., p. 74, U.S.Code Cong. & Admin.News 1962, p. 3034. Section 1101(b), like the 1955 Act, *supra*, provides for limited (and lessening) increases for those whose annuities would begin in the period between January 2, 1963 and December 31, 1966.

8. This thought was expressed by Chairman Murray of the House Post Office and Civil Service Committee at the time the House adopted the conference report on the 1958 Act. 104 Cong.Rec. 10537.

9. Plaintiff's separation from the service in 1953 was labeled "Resignation." Shortly before she reached 62 in July 1960, the Civil Service Commission sent her a form letter saying that "our records indicate that you are entitled to civil service retirement annuity", and asking her to complete an "application for retirement." The letter added: "Your application for retirement should be filed at least 60 days prior to the date you plan to retire." The assumption clearly was that retirement did not commence until the receipt of the annuity.

It is not normal to refer to such people as "retired employees", and there is no reason to think Congress departed in this instance from the ordinary usage.

■■ There are also two other reasons for rejecting plaintiff's interpretation. One is that the Civil Service Commission has, from the beginning, read the 1958 Act (and its predecessors) the other way. Since this contemporaneous administrative construction is reasonable, and not opposed to the language or history of the statute, it should be followed. Udall v. Tallman, 85 S.Ct. 792, pp. 795, 800–802, decided March 1, 1965; Fox v. Standard Oil Co., 294 U.S. 87, 96, 55 S.Ct. 333, 79 L.Ed. 780 (1935); Allison v. United States, 301 F.2d 670, 157 Ct.Cl. 7, 12, cert. denied, 371 U.S. 901, 83 S.Ct. 206, 9 L.Ed.2d 164 (1962). The other point is that plaintiff's view would impose on the United States a very large financial burden.[10] In a case coming from this court the Supreme Court cautioned against reading a statute to impose liability on the Federal Government, where "the liability would mount to great sums", unless the words (or intent) are plain. Pine Hill Coal Co. v. United States, 259 U.S. 191, 196, 42 S.Ct. 482, 66 L.Ed. 894 (1922). Cf. United States v. Zazove, 334 U.S. 602, 617, 68 S.Ct. 1284, 92 L.Ed. 1601 (1948).

The decision in Hurtt v. United States, 309 F.2d 404, 159 Ct.Cl. 126 (1962), is not in conflict with what we decide today. That case involved the same 1958 Act, but another provision. The plaintiff there was the widow of a federal employee, and the relevant clause was Section 1(b), 72 Stat. 218, relating, not to a "retired employee", but to a "survivor." [11] Mrs. Hurtt, as the unremarried widow of the dead employee, was held to be a "survivor" "entitled to receive an annuity" even though she had not quite attained the proper age by August 1, 1958. The court did not have any occasion to pass upon the separate term and concept which is now relevant— "retired [federal] employee." Moreover, the policy considerations applicable to survivors are not the same as for former employees like Mrs. Schellfeffer; and both the total amount and the number of individuals involved in payments to survivors under the 1958 Act were comparatively small.[12]

The plaintiff's motion for summary judgment is denied and the defendant's cross-motion is granted. The plaintiff is not entitled to recover and her petition is dismissed.

10. Defendant tells us that tens of thousands of former employees are in the same position as this plaintiff. See H. Rept. No. 1361, 88th Cong., 2d Sess.

11. Section 1(b) reads as follows: "(b) The annuity otherwise payable from the civil service retirement and disability fund to—
"(1) each survivor who on August 1, 1958, is receiving or entitled to receive an annuity based on service which terminated prior to October 1, 1956, and
"(2) each survivor of a retired employee or Member of Congress described in subsection (a) of this section,

shall be increased by 10 per centum. No increase provided by this subsection shall exceed $250 per annum."

12. It should also be noted, with respect to the court's discussion, in Hurtt, of the meaning of "entitled to receive an annuity" in Section 1(b) (1), that "the precise meaning" of the term "entitled" "as it appears in a particular statute, regulation, or document, must be drawn from the context, structure, and purpose of the [particular] provision under scrutiny." Merrill v. United States, Ct.Cl., 338 F.2d 372, 374, decided Nov. 13, 1964.