The summary judgment in favor of the United States is affirmed.

AFFIRMED.

**Constance HORNER, Director, Office of Personnel Management, Petitioner,**

**v.**

**Joseph L. BENEDETTO, Respondent,**

**and**

**Merit Systems Protection Board, Intervenor.**

**Appeal No. 87–3373.**

United States Court of Appeals, Federal Circuit.

May 25, 1988.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for petitioner. With him on the brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Hugh Hewitt, Gen. Counsel, Thomas Moyer, Asst. Gen. Counsel and Earl Sanders, Office of Personnel Management, of counsel.

Thomas H. Gabriel, Merit Systems Protection Board, Washington, D.C., argued for intervenor. With him on the brief were Llewellyn M. Fischer, Gen. Counsel, Mary L. Jennings, Deputy Gen. Counsel and Marsha E. Mouyal, Reviewer for Litigation.

Before SMITH and ARCHER, Circuit Judges, and BALDWIN, Senior Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

The Office of Personnel Management (OPM) appeals from the decision of the Merit Systems Protection Board (board), *Benedetto v. Office of Personnel Management*,[1] affirming, as modified, the administrative judge's reversal of OPM's denial of the application of Joseph L. Benedetto (Benedetto) for a reduced annuity with survivor benefits. We affirm.

*Issue*

Whether the board erred in determining that Benedetto was entitled to receive a reduced annuity with survivor benefits for his spouse.

I. *Background*

Benedetto held positions in various federal agencies from November 10, 1939, through June 19, 1947, with some interruption for military service. He also worked in federal service from August 1948 until

October 1951 and for 2 months in 1953. Benedetto filed an application for a deferred annuity on May 16, 1981, after he reached the age of 62. He requested a reduced annuity with survivor benefits for his wife. OPM denied Benedetto's request because he had separated from federal service in 1953, prior to the date on which individuals who were eligible to receive deferred annuities could elect a survivor's annuity.

Benedetto appealed the denial to the board. Citing a Fifth Circuit case, *Crawford v. United States*,[2] the administrative judge held that the availability of such an annuity is determined by the law in effect at the time of the employee's retirement, rather than that in effect at the time of his separation. The administrative judge held that Benedetto was entitled to elect a reduced annuity with survivor benefits.[3]

OPM appealed the decision of the administrative judge to the full board, which denied review. OPM then filed a petition for review of the board's decision with this court pursuant to 5 U.S.C. § 7703(d) (1982).

1. *Benedetto v. Office of Personnel Management,* 32 M.S.P.R. 530 (1987).

2. *Crawford v. United States,* 609 F.2d 1185 (5th Cir.1980). In *Crawford,* the Fifth Circuit affirmed the district court on the basis of the Memorandum of Opinion by the district court, which was attached as an appendix to the Fifth Circuit's opinion. Crawford separated from federal service in 1953. He applied for his deferred annuity in 1968 when he reached the age of 62. He indicated that he wanted a reduced annuity with a survivor's annuity for his wife. When he died in 1976, his wife applied for the survivor's annuity. Mrs. Crawford was told she was ineligible for survivor benefits because, at the time her husband separated from federal service in 1953, there was no provision for the election of a survivor's annuity by those eligible to receive deferred annuities. Mrs. Crawford then filed suit against the United States in order to obtain the survivor benefits.

The district court held that an employee's eligibility to elect a survivor's annuity is governed by the law in effect when the employee retires. The court defined "retired," in the case of an individual who had previously separated from federal service, as the date on which that person was first entitled to receive an annuity.

The court concluded that the Federal Executive Pay Act of 1956, Pub.L. No. 84-854, 70 Stat. 736 (1956) (the 1956 Act), did not apply to

Crawford because § 403 gave the act prospective application only, and Crawford had separated from service prior to the effective date of the 1956 Act. The court also concluded that it was not bound by the 1956 Act's prospective limitation because § 403 was expressly repealed by the codification of title 5 in the Act of September 6, 1966, Pub.L. No. 89-554, 80 Stat. 378 (1966) (the 1966 Act).

Finally, the court found that the prospective limitations of the 1966 Act did not prohibit Crawford's election of a survivor's annuity. The court found that Crawford's rights did not mature before the effective date of the 1966 Act because he was not entitled to receive his annuity until he reached the age of 62, which occurred after the effective date of the 1966 Act. In addition, the court found that the prohibition on increases or decreases in the amount of annuity received, which is contained in § 7(f), was not violated because, with a survivor's annuity, lifetime benefits are reduced. The court found that the overall level of benefits received was not changed by the election.

3. Benedetto also had argued that he should have received retirement credit for several temporary appointments as a court reporter in the 1970's. The administrative judge decided this issue against Benedetto, and it was not appealed to the full board.

The board moved to remand the case for the issuance of a precedential opinion. That motion was granted by this court.[4]

On remand, the board affirmed, as modified, the decision of the administrative judge reversing OPM's denial of Benedetto's application for a reduced annuity with survivor benefits. The board expressly agreed with the Fifth Circuit's interpretation of the law in *Crawford*. OPM argued that *Crawford* was wrongly decided and that Benedetto's rights were governed by the law in effect when he separated from federal service in 1953. OPM contended that Benedetto was precluded from receiving survivor benefits because the 1956 amendments to the Civil Service Retirement Act (CSRA)[5] (the 1956 Act), which first provided survivor benefits for employees eligible to receive deferred annuities, excluded those who had retired or otherwise separated from Government service prior to the effective date of that statute. The board found, as had the Fifth Circuit, that section 403, the provision in the 1956 Act which made election of the survivor's annuity prospective only, was repealed by the codification of title 5 in 1966[6] (the 1966 Act).

The board also found that Benedetto retired, not in 1953 when he separated from federal service, but in 1981 when he first became entitled to receive an annuity. The Fifth Circuit had reached the same finding, relying on the definition of retirement set out in *Schellfeffer v. United States*.[7] OPM argued that the Fifth Circuit erred in relying on *Schellfeffer* because it dealt with the meaning of the term "retired" only in connection with a 1958 Act of Congress which increased annuities for certain retired employees.[8] The board recognized, however, that the definition used by the court in *Schellfeffer* was the meaning the court had generally given to the term "retired," apart from the specific legislative history of the 1958 Act.

## II. *Eligibility for a Survivor's Annuity*

Congress first included a provision allowing retiring federal employees to elect a reduced annuity with a spouse's survivor annuity in 1948.[9] This right was limited to employees retiring under specific provisions of the CSRA, and employees entitled to deferred annuities were not covered by the act.[10]

---

**4.** *Horner v. Benedetto,* Misc. No. 76 (Fed.Cir. July 17, 1986).

**5.** Federal Executive Pay Act of 1956, Pub.L. No. 84–854, 70 Stat. 736 (1956).

**6.** Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 378 (1966).

**7.** *Schellfeffer v. United States,* 343 F.2d 936, 170 Ct.Cl. 178 (1965). In *Schellfeffer,* an annuitant requested additional retirement benefits. She based her claim on a 1958 Act of Congress, Pub.L. No. 85–465, 72 Stat. 218 (1958), which increased the annuity of retired employees who were receiving or who were entitled to receive an annuity based on service ending before 1956. Schellfeffer argued that she fell within the terms of the act because she was "retired" since she had left federal service in 1953, she was "entitled to receive an annuity" since her rights to the deferred annuity at age 62 were already fixed, and her federal service had ended before 1956.

The Court of Claims concluded that Schellfeffer was not entitled to the increase in benefits because she was not "retired" within the meaning of the statute. The court held that a person is "retired" when he is immediately entitled to receive an annuity and not before. A person

who separated from federal service before retiring was "simply a former federal employee who had resigned from the Government but who had not yet retired—in the sense in which that concept has been used in the federal service." *Schellfeffer,* 343 F.2d at 941, 170 Ct.Cl. 178. (Footnote omitted.)

**8.** Civil Service Retirement—Annuity Increases, Pub.L. No. 85–465, 72 Stat. 218 (1958).

**9.** Civil Service Retirement Act—Amendment, Pub.L. No. 80–426, 62 Stat. 48 (1948).

**10.** The deferred annuity provisions were amended by § 7 of the 1948 Act. Section 7 was not included on the list of retirement provisions to which survivor's annuity coverage was extended. It is clear from the legislative history that Congress intended to exclude deferred annuitants from being able to elect survivor's annuities.

"Section 4(b) would allow a retiring employee (*other than one receiving an annuity under sec. 7*) to elect an annuity reduced by 10 percent with the provision that 50 percent of his original annuity would be paid to his widow, beginning at his death or her attainment of age 60, whichever is later." (Emphasis supplied.)

Congress extended the eligibility to elect the survivor's annuity to employees entitled to deferred annuities in the 1956 Act. However, section 403 of the 1956 Act expressly precluded retroactive application of the 1956 Act to those employees who retired or were separated before the effective date of the 1956 Act. Section 403 provided:

> Except as otherwise provided, the amendments made by this title shall not apply in the case of employees or Members retired or otherwise separated prior to its effective date, and the rights of such persons and their survivors shall continue in the same manner and to the same extent as if this title had not been enacted.

It is clear that, under the terms of the 1956 Act, Benedetto was not entitled to elect a survivor's annuity because he separated from federal service in 1953. Therefore, OPM's position would be correct if the statute had remained unchanged. However, in 1966, Congress codified title 5. In so doing, it provided an unqualified right to a survivor's annuity for anyone who "retired" under the 1966 Act. Congress eliminated the requirement that an individual elect a survivor's annuity and made the survivor's annuity automatic unless the employee clearly indicated otherwise. Section 8341(b) of 5 U.S.C. (1966) provided: [11]

> If an employee or Member dies after having retired under this subchapter and is survived by a spouse to whom he was married at the time of retirement, the spouse is entitled to an annuity * * * unless the employee or Member has notified the Commission in writing at the time of retirement that he does not desire his spouse to receive this annuity. The annuity of the spouse commences on the day after the retired employee or Member dies.

OPM contends that this provision does not apply to Benedetto because his rights continued to be governed by the 1956 Act's exclusion from coverage of those who separated from federal service before the effective date of the 1956 Act. According to OPM, the limitation expressed in section 403 remained in effect despite its express repeal in the 1966 Act. Section 403 was one of many statutes which were repealed when title 5 was codified in 1966. The explanation contained in the legislative history concerning the repeal of section 403 stated:

> Executed. Preserved existing rights of persons retired or separated before effective date of the Act. Existing rights are preserved by technical § 8 of this bill.

Section 8(a) of the 1966 Act provided:

> The laws specified in the following schedule are repealed except with respect to rights and duties that matured * * * before the effective date of this Act and except as provided by section 7 of this Act.

OPM contends that section 8(a) continued in effect the exclusion from eligibility to elect a survivor's annuity of those employees who separated from federal service prior to 1956. OPM's basic argument is that the repeal of section 403 would amount to a substantive change in the law and that the legislative history clearly indicates that Congress did not intend a substantive change in the law. OPM cited several sections of the legislative history of the 1966 Act to support its argument. Both the House and the Senate reports contained the following explanation of the purpose of the bill: [12]

> The purpose of this bill is to restate in comprehensive form, without substantive change, the statutes in effect before July 1, 1965, that relate to Government employees, the organization and powers of Federal agencies generally, and administrative procedure, and to enact title 5 of the United States Code.

S.Rep. No. 746, 80th Cong., 2d Sess., *reprinted in* 1948 U.S.Code Cong. & Admin.News 1107, 1110.

11. 5 U.S.C. § 8341(b)(1) has not changed in relevant part from the 1966 Act.

12. S.Rep. No. 1380, 89th Cong., 1st Sess. 18;

Both reports also stated: [13]

In order to restate the statutes relating to personnel in one comprehensive title, *it is necessary to make changes in language.* Some of the changes are necessary to attain uniformity within the title. Others are necessary to effect consolidation of related statutes and to conform to common contemporary usage. *In making changes in the language,* precautions have been taken against making substantive changes in any statute. [Emphasis supplied.]

Finally, the House report stated: [14]

Like other recent codifications undertaken as a part of the program of the Committee on the Judiciary of the House of Representatives to enact into law all 50 titles of the United States Code, there are no substantive changes made by this bill enacting title 5 into law. *It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations.* This fear might have some weight if this were the usual kind of amendatory legislation where it can be inferred that a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the statute is intended to remain substantively unchanged. [Emphasis supplied.]

However, this legislative history does not support OPM's position. As the underlined

H.R.Rep. No. 901, 89th Cong., 1st Sess. 1.

13. S.Rep. No. 1380 at 19; H.R.Rep. No. 901 at 2.

14. H.R.Rep. No. 901 at 3.

15. Webster's New Collegiate Dictionary (1979).

16. As for the argument that permitting the election of a survivor's annuity by individuals who separated from federal service before the effective date of the 1956 Act, but who did not retire until after the effective date of the 1966 Act, will increase the total amount of benefits received by these individuals in violation of § 7(f) of the 1966 Act, we note, as did the Fifth Circuit in *Crawford,* that Congress considered that the availability of the election merely extended the

portions suggest, Congress was concerned that changes in the language used in certain sections of the act as passed might be interpreted as an intent to change the substance of those sections. The legislative history quoted above makes it clear that Congress did not intend to make substantive changes in the laws *replaced* by the sections it enacted. That this is the correct interpretation of the legislative history is shown by section 7(a) of the 1966 Act, which states that:

The legislative purpose in enacting sections 1–6 of this Act is *to restate, without substantive change, the laws replaced by those sections* on the effective date of this Act. [Emphasis supplied.]

Section 403 was not replaced by any section; it was repealed. Therefore, OPM's argument must fail.

█ Section 8(a) repealed section 403 except as to rights that had matured before the effective date of the 1966 Act. OPM contends that Benedetto's rights matured in 1953 when he separated from federal service. We disagree. To mature is "to become due." [15] Benedetto's rights did not come due until he was entitled to receive his deferred annuity. That did not occur until he retired in 1981.[16]

█ Therefore, we hold that an employee who retires, i.e., when that employee is first eligible to receive an immediate annuity, from federal service after the effective date of the 1966 Act is entitled to receive a reduced annuity with survivor benefits. Since Benedetto did not retire until 1981,

same rights to persons entitled to deferred annuities that those entitled to immediate annuities already had.

"At the present time only an employee retiring on immediate annuity can elect a joint and survivorship annuity. The bill extends this right to employees receiving deferred annuities. It was felt that since employees entitled to deferred annuities contributed to the retirement fund at the same rate as other annuitants, and since they receive annuities computed in precisely the same manner as other annuitants, they should be entitled to provide the same protection to their survivors as other annuitants."

S.Rep. No. 2642, 80th Cong., 2d Sess., *reprinted in* 1956 U.S.Code Cong. & Admin.News 3725, 3734.

when he reached the age of 62, he was entitled to the reduced annuity with survivor benefits.

## Conclusion

The board's decision that Benedetto was entitled to receive a reduced annuity with survivor benefits for his wife is affirmed.

AFFIRMED.